## NAHIKIAN v. MATTINGLY.

1. CORPORATIONS—CORPORATE MANAGEMENT—JUDICIAL INTERFERENCE —SALARIES.

Salary of president and manager of corporation is a matter of corporate management of directors and their action in respect to it, in the absence of fraud or wilful or wanton departure from duty, bars judicial interference.

2. SAME—PRESIDENT—SALARY—DISSATISFIED STOCKHOLDERS.

Burden of establishing unreasonable compensation of president of corporation is on dissatisfied stockholders and they must show unjustifiable oppression in such respect.

3. SAME—PRESIDENT—UNJUSTIFIED EXPENSES.

Purchase of residence in Washington, D. C., and a Cadillac automobile and hiring chauffeurs by president with company money *held,* an unjustifiable expense to company with plant in Michigan where purpose of such expenditures was gratification of personal inclination rather than business interests of company.

4. SAME—PRESIDENT—PATENTS—TRUSTS.

President of corporation holds patents in trust where patents were developed by practical employees to meet company needs but applied for and taken in his name because of understanding that corporation could not be an inventor.

5. SAME—PRESIDENT—PATENTS—ROYALTIES—COURTS—JURISDICTION.

Contract to pay three per cent. of gross sales as royalties to president of corporation on patents relative to universal joints held by him under trust relationship for corporation is unconscionable and royalties received thereunder must be returned to corporation, the State court having power to compel assignment of patents.

6. SAME—PRESIDENT—PATENTS—STATUTE OF LIMITATIONS.

President of corporation is estopped from invoking statute of limitations as to claim of ownership of patents where he dominated corporation and held patents in trust for it.

7. CORPORATIONS—STOCKHOLDERS—TRANSFER OF SHARES—PARTIES.

Stockholders who parted with shares of stock to help finances of corporation by assigning certificates to president are not entitled to return of shares in a suit to which they are not parties but such shares as he gave away or retained himself must be turned over to corporation.

8. APPEAL AND ERROR—CORPORATE MANAGEMENT—JUDICIAL INTER-
FERENCE.

Decree removing defendant from office of president and director
and position as manager of corporation is reversed on appeal
as an unwarranted judicial interference with internal cor-
porate management where corporation prospered under his
management and he is not guilty of such fraud that he should
have been removed by directors or stockholders.

9. CORPORATIONS—ATTORNEY FEES—MINORITY STOCKHOLDERS—AP-
PEAL AND ERROR—AUDITOR FEES.

Amount of compensation of attorneys for plaintiffs, minority
stockholders, in suit to recover corporate funds and property
is reduced on appeal to conform to modified relief afforded to
corporation; allowance to auditors being affirmed.

10. SAME—MINORITY STOCKHOLDERS—ESTOPPEL—EQUITY.

Minority stockholder who participated in election of directors
of whose conduct he now complains is not estopped where other
minority stockholders likewise apply for equitable relief from
palpable wrong; although he may not recover compensation
for time spent in and about suit to recover corporate funds.

Appeal from Allegan; Miles (Fred T.), J. Sub-
mitted June 20, 1933. (Docket No. 93, Calendar No.
37,282.) Decided December 5, 1933. Rehearing de-
nied January 30, 1934.

Bills by Sarkis M. Nahikian, Esther McDonnell
Young and Agnes R. Blood against Leonard H. Mat-
tingly, Sr., Leonard H. Mattingly, Jr., and Blood
Brothers Machine Company for an accounting, re-
moval of certain officers and for other relief. Cases
consolidated before trial. Decree for plaintiffs.
Defendants Mattingly appeal. Plaintiffs Nahikian
and Young and their attorneys appeal from decree
as to compensation. Reversed in part, affirmed in
part.

*Leo W. Hoffman,* for plaintiff Nahikian.

*Clare E. Hoffman,* for plaintiffs Young and Blood.

*Mason & Sharpe,* for defendants Mattingly.

*Wilkes & Stone* and *Knappen, Uhl, Bryant & Snow,* for defendant Blood Brothers Machine Company.

*Dunham & Sherk, amici curiæ.*

Wiest, J. Two bills, upon hearing consolidated, were filed by three minority stockholders of the Blood Brothers Machine Company to obtain decree that Leonard H. Mattingly, Sr., hereinafter styled defendant, pay back to the corporation excessive salary, unauthorized expense moneys, royalties received on a patent, assign the patent to the company, also turn over shares of stock held by him, in trust for the company, pay his admitted indebtedness to the company and remove him from the office of president and director and the position of general manager. The decree in the circuit court adjudged that defendant forthwith pay to the clerk of the court the following sums, together with interest thereon: unauthorized salary $18,064.46; excess expense money $676.31; unauthorized expense money $30,137.72; indebtedness to the company $23,916.25; royalties on patents $39,139.15, or a total sum, inclusive of interest, of $136,469.19. The decree also ordered assignment of certain stock certificates to the company, transfer of patents, and removed Mr. Mattingly, Sr., from the board of directors, from the office of president and the position of manager. Leonard H. Mattingly, Jr., was also required to assign certain certificates of stock to the company.

Some years ago the company was in financial straits and its principal creditors selected and induced defendant to enter the company and manage its affairs. Under his management the company prospered. Evidently he became the dominant fac-

tor in the company and others interested therein deferred to his will. Unless he used his power for selfish ends and to mulct the company the remedy of those dissatisfied is within the company and not in court. The decree is drastic for it assumes corporate management but, if justified by the record, constitutes a remedy open to resort by the wronged, unless they have acquiesced or have slept on their rights. The record is voluminous.

The fixing of the salary of defendant by the board of directors may have been ill-advised action, considering the financial condition of the corporation and the character of the services of the president, but it was a matter of corporate management, vested in the directors, and their action, in the absence of fraud or wilful or wanton departure from known or manifest duty, bars judicial substitution of opinion.

In *McKey* v. *Swenson,* 232 Mich. 505, we held action in fixing salaries wholly void and cast the burden upon the officers to give the court information upon which reasonable compensation could be fixed. Such, however, is not the case at bar, for here we do not have wholly void action but only assertion of unreasonable compensation and the burden is on plaintiff to establish the charge.

As said in *Burden* v. *Burden,* 159 N. Y. 287 (54 N. E. 17):

"The plaintiff is in the position of all minority stockholders, who cannot interfere with the management of the corporation so long as the trustees are acting honestly and within their discretionary powers."

A minority complaining stockholder, if he avers excessive salary, must show facts establishing unjustifiable oppression in such respect. The evidence

fails to show that salary voted defendant by the board of directors was so unreasonable or excessive, under the circumstances, as in itself to be deemed fraudulent and, therefore, authorizing restoration in whole or in part. We may not readjust the salary without a yardstick applicable to the particular circumstances and not even then upon mere difference of opinion from that of the board of directors, but only upon concrete proof that the salary evidences wrongdoing or inexcusable oppression to the point of being fraudulent. Less than this would constitute an intolerable interference with legitimate internal corporate management.

It is a well-settled rule of law that the authority of the directors is absolute when they act within the law, and that questions of policy and internal management are, in the absence of nonfeasance, misfeasance, or malfeasance, left wholly to their decision. Ratification by the board of directors of an increase in defendant's salary, if made in good faith and believed to be for the best interest of the company, validated the increase. Decree as to salary reversed.

Defendant purchased a residence in the city of Washington at the expense of the company and resided there some time and claims it was good business judgment and in the interest of the company. The expense was not justified and the purpose, considering the disclosed circumstances, was gratification of personal inclination and social enjoyment rather than business interests of the company. Defendant's activities in Washington, as described by himself, were quite nebulous, and in no sense called for or justified purchase of a residence, a Cadillac automobile and employment of chauffeurs at the ex-

pense of the company. All company money, so expended, must be returned as ordered by the circuit judge.

The principal business of the company was the manufacture of a "universal joint" and, in course of time two patents relative thereto were taken out in the name of Leonard H. Mattingly, Sr., and another taken out by an employee was assigned to him. Two of the patents are of little use or value but one taken in the name of defendant, although developed in the course of and under his management of the company, he claims to hold in his own right and, under contract for royalty with the company, he has received a large sum for use thereof. Defendant was not a mechanical genius and the evidence is persuasive that need of the company and efforts of practical employees to meet it developed the invention and the patent, applied for and taken in the name of defendant, was based on an understanding that the corporation, as such, could not be an inventor.

The subsequent royalty contract was but another scheme to get something out of the company. The patents all belong to the company and were merely held by defendant as trustee for the company.

It is contended in behalf of defendant that, by lapse of time, the statute of limitations (3 Comp. Laws 1929, § 13976) prevents decree placing ownership of the patents in the corporation. Considering the dominance of defendant, the trust relation under which the patents were taken in his name, the evident understanding that the patents belonged to the company, at least until the royalty contract was made in 1929, estops defendant from invoking the statute of limitations.

In February, 1929, defendant was again elected president and the following resolution was adopted by the directors:

"Whereas, it was originally and has long been understood that when Blood-Brothers Machine Company were in any financial condition to do so, they would pay L. H. Mattingly for the use of his patents on universal joints and as the company did attain that position and has maintained it during the year 1928 and will, in all likelihood, attain it during 1929, now, therefore, be it moved that the company pay said L. H. Mattingly, three per cent. of its gross sales from and beginning the 1st day of January, 1928, and further, that the vice-president and secretary be empowered to enter into a contract with L. H. Mattingly for the sole and exclusive use of any and all patents possessed by him having relation to universal joints or other flexible couplings, for a period of five years from the date of said contract, and that the vice-president and secretary be empowered to execute any and all papers necessary to carry this into effect."

This contract was unconscionable.

The point that the State court is without jurisdiction to decree that the patents be assigned is without merit. *Becher v. Contoure Laboratories, Inc.*, 279 U. S. 388 (49 Sup. Ct. 356). Decree respecting patents affirmed.

Defendant had keen business vision, but failed to recognize, in his dealings with the company, the distinction between *meum* and *tuum*, so essential in a fiduciary and managing capacity.

Corporation funds, paid for a Cadillac automobile for use in Washington, and salary paid to chauffeurs must be returned.

In order to help the finances of the company, stockholders turned shares over to Mr. Mattingly for

resale to themselves or others. Sales and repurchases, to some extent, were made but some shares were given away by defendant and others retained by him. The shares so given away and those retained belong to the company and the recipients of his unwarranted bounty may not retain the shares; neither may defendant treat such shares in his hands as his own.

It is contended, however, that the undisposed-of shares, so turned over to defendant, should be returned to the donors and that this cannot be decreed because they are not parties to this suit. The donation was to the corporation and the shares were assigned to defendant as a matter of convenience. The shares must be turned over to the corporation and if the donors have remedy, and the purchasers of shares care to be heard upon the subject of disposition of the undisposed-of shares, their rights must be worked out in some other action. It is clear that defendant cannot treat such shares as his own.

Under the management of defendant the corporation has successfully weathered financial storms and, outside of the dealings here mentioned and set right, the manager has exercised keen vision and business acumen.

The decree removed him from the office of president and director and the position of manager. This involves internal corporate affairs and the decree is an unwarranted interference therewith, unless the deposed officer has been guilty of fraud of such a nature that directors or shareholders should have removed him and have failed to do so upon request, or that demand of action by the directors or stockholders would have been futile.

We think defendant has been laboring under a mistaken idea of his proper relations to the com-

pany and has believed that his acts were legal and we cannot hold that he was actuated by fraudulent intent and, therefore, his retention or discharge should be left with the directors elected by the stockholders.

Plaintiff Nahikian appeals from the refusal of the trial court to allow him compensation for time spent in and about this suit and from refusal to allow more than $6,000, compensation to attorneys for plaintiffs. The suits were justified by reason of corporate management, resulting in depletion of its assets, and we can see reason for directing the corporation to compensate the attorneys who have successfully prosecuted the suits to the benefit of the corporation. The evidence on that subject, taken in the circuit, was based upon the results there decreed, and cannot be the measure here for we have materially modified the relief. In consideration of the measure there shown and the bearing of the modified relief we think the corporation should compensate plaintiff's attorneys to the amount of $2,000. Plaintiff himself is a stockholder and will gain by the relief granted and, beyond that, he should be left to the experience of the litigant who loses if he gains his suit.

The allowance of compensation to the auditor is affirmed.

Plaintiff would be in a better position had his solicitude in behalf of the corporate welfare moved him before, rather than after, his discharge as sales manager, for it is inconceivable that he was not fully aware of much now complained of.

The right of plaintiff Nahikian to file a bill is questioned because, as a stockholder, it was upon his motion, on two occasions, that the directors he now complains of were elected, and he admits that at such times he so acted to hold his job and was

aware that honorable conduct on his part was there-
by violated. This has caused us serious difficulty
and has been solved only by the fact that other mi-
nority stockholders have invoked the aid of equity
and the wrongs established are so palpable that the
rule of estoppel should not be applied.

The decree in the circuit is modified to accord with
this opinion and, as modified, is affirmed, with costs
to plaintiffs.

McDONALD, C. J., and POTTER, NORTH, FEAD, and
BUTZEL, JJ., concurred. SHARPE, J., did not sit.
CLARK, J., took no part in this decision.