*In re* WOOD'S ESTATE.
APPEAL OF PAULINE M. S. WOOD.

1. APPEAL AND ERROR—DEFINITION OF AN AGGRIEVED PARTY.

To be an aggrieved party entitling one to appeal from an order made by a probate court relative to an estate, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency (Act No. 288, chap. 1, § 36, chap. 8, § 3, Pub. Acts 1939).

2. PARTIES—PROCEEDING TO PROBATE A WILL.

Parties in interest in a proceeding to probate a will are the beneficiaries under the will and those upon whom the law would cast the property in the event the will was set aside.

3. APPEAL AND ERROR—CLAIMS AGAINST ESTATES—AGGRIEVED PARTIES—WIDOW.

Widow of testator was an aggrieved person as to allowance of claims against estate of testator and disallowance of claim against claimant within meaning of statute permitting an appeal by persons aggrieved by any order of the judge of probate and recommendations of referees as to allowance or disallowance of claims and offsets against claims as her interest is a present one and of a pecuniary nature (Act No. 288, chap. 1, § 36, chap. 8, § 3, Pub. Acts 1939).

4. SAME—QUESTIONS REVIEWABLE—CLAIMS AGAINST ESTATES—WIDOW AS PARTY.

Question as to right of widow of testator to contest claims against estate of testator or to file a claim in behalf of the estate, not having been raised in probate or circuit court, will not be considered where raised for the first time in the Supreme Court.

5. BILLS AND NOTES—CONSIDERATION PRESUMED WHERE INSTRUMENT IS NEGOTIABLE—DEFENSE OF ABSENCE OR FAILURE OF CONSIDERATION.

Under the negotiable instruments law a negotiable promissory note is deemed prima facie to have been issued for valuable consideration and absence or failure of consideration is matter of defense where note is in the hands of the immediate parties (2 Comp. Laws 1929, §§ 9273, 9277).

Acceptance of offer for unilateral contract, see 1 Restatement, Contracts, §§ 45, 52.

6. SAME—CONSIDERATION—PRESUMPTIONS—RECORD.

On appeal from judgment for claimant against estate on testator's negotiable promissory note, record *held*, to contain no proof to overcome the presumption of consideration (2 Comp. Laws 1929, §§ 9273, 9277).

7. CORPORATIONS—LOANS TO DIRECTORS—STATUTES.

A statute prohibiting a director of a corporation from borrowing any of its deposits or funds is intended for the protection of the stockholders and depositors or creditors and does not preclude the corporation from suing the director to recover money loaned to him in violation of the statute or from enforcing securities taken by it in the transaction (Act No. 327, § 46, Pub. Acts 1931).

8. BILLS AND NOTES—CORPORATIONS—OFFICERS—CONSIDERATION— STATUTES.

Negotiable promissory note given by president and general manager of a corporation to it and secured by collateral was an enforceable obligation against his estate notwithstanding statute prohibiting loans by corporations to officers and directors where it was not an integral part of the corporation's business to make loans since it does not appear to have been the intent of the statute to make such note void and unenforceable and want of consideration for the note is not shown (2 Comp. Laws 1929, §§ 9273, 9277; Act No. 327, § 46, Pub. Acts 1931).

9. EVIDENCE—WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—BOOKS OF ACCOUNT.

Books of account, properly presented, are admissible for whatever evidentiary force they may have in order to establish a claim against a deceased person despite statute prohibiting testimony as to matters equally within knowledge of deceased (3 Comp. Laws 1929, § 14219).

10. ESTATES OF DECEDENTS—CLAIMS AGAINST ESTATES—OPEN ACCOUNT OF CORPORATION'S OFFICER—EVIDENCE.

In proceeding in probate court against estate of former president of corporation, evidence consisting of records kept in the regular course of business, testimony of a witness identifying the account and letter signed by testator, containing an admission that he owed the corporation on open account, *held*, to justify finding of the trial court of liability on part of president's estate.

11. CORPORATIONS—PAYMENT OF SALARY TO OFFICER'S ESTATE FOR PERIOD SUBSEQUENT TO DEATH.

Under resolution of board of directors of corporation providing that salaries of the four executive officers of the corporation were to be paid for one year after date of death to the executor of the decedent's estate or to a legal heir or heirs to be determined at the time by the board, the corporation may not avoid liability because of the board's failure to act since it was the intent of such resolution that the year's salary be paid to the estate of an officer who came within the terms of the resolution as to longevity of previous service and who died before such resolution was rescinded.

12. SAME—CONTRACTS—PENSIONS TO ESTATE OR HEIRS OF DECEASED OFFICERS OR EMPLOYEES.

Corporations have a right to enter into agreements with their officers and employees that, after the death of either of the latter, a pension may be paid to the estate of the decedent or his heirs.

13. SAME—CONTRACTS—DONATIONS.

Under certain circumstances corporations may make donations or subscriptions in aid of enterprises that will tend, directly or indirectly, to increase the corporate business and benefit the corporation and stockholders, make gifts to families of deceased officers, pay extra wages to certain employees and enter into contracts for advertising.

14. SAME—DISCRETION OF DIRECTORS—INTERNAL MANAGEMENT.

The authority of the directors of a corporation is absolute when they act within the law and questions of policy and internal management are, in the absence of nonfeasance, misfeasance, or malfeasance, left wholly to their decision.

15. SAME—INCREASE IN SALARY OF AN OFFICER—RATIFICATION.

The ratification by the board of directors of an increase in an officer's salary, if made in good faith and believed to be for the best interest of the company, validated the increase.

16. SAME—OFFICERS—PENSIONS.

The rights of the estate of a deceased officer to payment of a year's salary by the corporation following his death became fixed upon the death of the officer, where he died before resolution providing for such payment was rescinded.

17. SAME—CONTRACTS—OFFER AND ACCEPTANCE—PENSIONS.

A resolution of the board of directors of a corporation providing for the payment of the salary of certain officers of

the corporation for a year after their death to their respective estates or heirs must be assumed to have been adopted as an inducement to such officers to continue in the employ of the corporation and to constitute an offer which was accepted by performance of duties by the officers.

18. CONTRACTS—UNILATERAL CONTRACTS.

There is no mutuality in a unilateral contract until the party claiming under it has complied with the terms of the proposition.

19. SAME—UNILATERAL CONTRACTS—CONSIDERATION.

When one makes a promise conditioned upon the doing of an act by another, and the latter does the act, the contract is not void for want of mutuality, and the promisor is liable; for upon performance of the conditions by the promisee the contract becomes clothed with a valid consideration which relates back and renders the promise obligatory.

20. COSTS—CLAIMS AGAINST ESTATES—COUNTERCLAIMS.

Costs are granted estate where a substantial counterclaim is allowed against claim presented against estate, notwithstanding appellant widow is unsuccessful in defeating two claims against the estate.

Appeal from Monroe; Sample (George W.), J., presiding. Submitted October 10, 1941. (Docket No. 34, Calendar No. 41,670.) Decided December 2, 1941.

In the matter of the estate of George Harley Wood, deceased. Pauline M. S. Wood, testator's widow, filed objections to the allowance of claims of the River Raisin Paper Company, a corporation, and presented a claim of the estate against the company, which was disallowed. The claims of the company were allowed. On appeal to circuit court, the order of the probate court was affirmed. Pauline M. S. Wood appeals. Affirmed and modified.

*Effler & Eastman* and *Joseph A. Navarre, Jr.,* for appellant.

*Oliver J. Golden* and *William H. Fallon,* for appellee River Raisin Company.

*Oliver J. Golden,* for Charles L. Wood, executor.

SHARPE, C. J.   The River Raisin Paper Company presented two claims against the estate of George Harley Wood, deceased.   One claim in the amount of $4,482.04 was based upon an open account with the testator; and the other claim was for $126,971.98 and interest based upon a promissory note dated March 2, 1939.

George Harley Wood, at the time of his death and for more than 10 years prior thereto, was president and general manager of the above corporation. He died testate on July 9, 1939, and Charles L. Wood, his son, was appointed executor of his estate.   At the time of this appointment, Charles L. Wood was vice-president of the paper company.   At the time the above claims were filed against the estate, the executor made no objections to their allowance, but the widow of testator, Pauline M. S. Wood, filed objections to the allowance of the claims and at the same time presented a claim of the estate against the paper company based upon a resolution passed by the board of directors of the corporation on September 13, 1938, which provided that, if any of the four executive officers of the paper company should have been in the service of the company for a period of 10 or more years immediately prior to his death, his salary was to be paid for one year after his death.

After a hearing, the claims of the paper company were allowed in the probate court and the claim of the estate was disallowed.   Upon appeal to the circuit court, the order of the probate court was af-

firmed. The widow filed a motion for a new trial, which was denied; and she has appealed.

In this court, the appellee paper company filed a motion to dismiss this cause on the ground that appellant is no more than an heir at law of the deceased and legatee under his will and may not either defend against the claim of the River Raisin Paper Company or prosecute the claim for $24,000 based upon the resolution of the paper company.

We are not impressed with the above motion. Act No. 288, chap. 1, § 36, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289–1 [36], Stat. Ann. 1941 Cum. Supp. § 27.3178 [36]), provides:

"In all cases not specifically prohibited by statute, any person aggrieved by any order, sentence, decree or denial of the judge of probate, may appeal therefrom to the circuit court for the same county, by filing a notice thereof with the judge of probate, within 20 days from the date of the order, sentence or denial appealed from, giving the reason for such appeal, together with such bond as is required in section 39 of this chapter."

Act No. 288, chap. 8, § 3, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289–8 [3], Stat. Ann. 1941 Cum. Supp. § 27.3178 [413]), in part provides:

"Parties aggrieved by the recommendation of the referee may file objections to the report of the referee with the probate court within 10 days after the filing of such report. * * *

"All orders of the court approving a referee's recommendations with reference to the allowance or disallowance in whole or in part of such claims and offsets and all orders of the probate court allowing or disallowing in whole or in part such claims or offsets shall be final orders and appealable."

In *Re Estate of Matt Miller,* 274 Mich. 190, 194, we said:

"The question of who may be aggrieved was settled in *Labar* v. *Nichols,* 23 Mich. 310. To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency. This is the general rule. 3 C. J. pp. 632–634.

"It is well settled that the parties in interest in a proceeding to probate a will are the beneficiaries under the will and those upon whom the law would cast the property in the event the will was set aside."

In the case at bar, the widow is an aggrieved person within the meaning of the statute. Her interest in the estate is one of a pecuniary nature. She has a present interest. Moreover, the record shows that her right to contest the claims or to file a claim in behalf of the estate was not raised in the probate court or the circuit court. Again we repeat that questions raised for the first time on appeal to the Supreme Court will not be considered. The motion is denied.

The note in question reads as follows:

"$126,971.98          Monroe, Michigan, March 2, 1939

"On or before five years from January 2, 1939, for value received, I promise to pay to the River Raisin Paper Company, a Michigan corporation of Monroe, Michigan, or to its order, the sum of $126,971.98, together with interest at the rate of 3 per cent. per annum, payable semiannually.

"This note is collaterally secured by 54,877 shares of the common capital stock of the River Raisin Paper Company, which stock is held in accordance

with the terms of an agreement entered into between the undersigned and the River Raisin Paper Company, a Michigan corporation, of even date herewith.

"G. H. Wood (Signed)"

On the same day, testator wrote the following letter to Ernst & Ernst, public accountants:

"Gentlemen:

"For the purpose of audit, I wish to certify that the amount due the River Raisin Paper Company, from me, at December 31, 1938, is correctly stated as follows:

*Note*

"Dated August 18, 1934
"Due—August 18, 1939
"Face Amount—$189,550
"Balance due at December 31, 1938, including additions made during 1938 ...........................$126,971.98

*Open Account*

"Personal account......$957.34
"Woodland Farms
      Account  ...........   499.44      1,456.78
            Total .......................$128.428.76

"Very truly yours,
"G. H. Wood (Signed)"

When the cause came on for trial, the note and the above letter were introduced in evidence. The signature on each of the above documents was identified as that of the testator.

There was also admitted in evidence, over the objection of appellant, an agreement dated March 7, 1939, purporting to be between the paper company and G. H. Wood, which provides:

"Whereas, party of the second part [G. H. Wood] has this day executed and delivered to the River Raisin Paper Company his certain promissory note

in the sum of $126,971.98, payable on or before January 2, 1944, with interest thereon at the rate of 3 per cent. per annum, payable annually, and has deposited with said company as collateral with and for the payment of said note 54,877 shares of the common capital stock of the River Raisin Paper Company duly indorsed, and party of the first part, by its said officers aforesaid, has accepted said note and collateral in lieu and in cancellation of that certain note of second party dated August 18, 1934:

"Now, therefore, it is agreed between the parties hereto, as follows:

"1.   Party of the second part agrees to and with first party and does by these presents hereby deposit and deliver to the company his certain promissory note dated January 2, 1939, calling for the payment of the principal sum of $126,971.98, payable on or before January 2, 1944, with interest on all balances from time to time remaining unpaid, at the rate of 3 per cent. per annum, payable annually. Said second party further delivers herewith to said company 54,877 shares of the common capital stock of the River Raisin Paper Company, duly assigned, to be held by said company as collateral security for the payment of the second party's note aforesaid."

This instrument purports to have been signed by Charles L. Wood, vice-president, and J. W. Walter, secretary-treasurer, of the River Raisin Paper Company, but the testator's signature is not on it.

On the record, it was stipulated that the River Raisin Paper Company is not a corporation an integral part of whose business permits it to make loans. It was admitted by the paper company "that two-thirds of the directorate did not vote this credit, did not vote the loan to deceased;" and "that the board of directors did pass a resolution directing the payment of a year's salary to certain executive officers for a year following their death; * * * that

that was not paid and was not credited against these claims."

Appellant contends that the paper company has failed to prove its claim based upon the promissory note dated March 2, 1939, because the transaction, upon which this note is based, was entered into contrary to the express provisions of Act No. 327, § 46, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135-46, Stat. Ann. § 21.46) and is, therefore, tainted or colored with illegality, consequently, no consideration for the note can be presumed; that the burden of proving legal consideration was upon the paper company; and that the paper company has not sustained the burden of proof.

Act No. 327, § 46, Pub. Acts 1931, upon which appellant relies, reads as follows:

"No officer or director of a corporation, other than a corporation an integral part of whose business permits it to make loans, shall either directly or indirectly authorize, consent to, make or allow any loan or advance to or overdraft or withdrawal by an officer, director or shareholder of such corporation out of its funds otherwise than in the ordinary and usual course of the business of the corporation and on the ordinary and usual terms of payment and security unless each such loan, advance, overdraft or withdrawal is approved by the vote of at least two-thirds of all the members of the board of directors of the corporation excluding any director obtaining such loan or advance or making such withdrawal or overdraft. A full and detailed statement of all such loans, advances, overdrafts and withdrawals and repayments thereof shall be submitted at the next annual meeting of shareholders and the aggregate amount of such loans, advances, overdrafts and withdrawals and repayments thereof shall be stated on the next annual report to shareholders. Any officer or director of a corporation who shall knowingly violate the

provisions of this section shall be liable to the corporation for the amount of the loan, advance or withdrawal together with interest at six per cent. per annum until the same shall have been paid. Any officer or director against whom a claim shall be asserted under or pursuant to this section * * * or who shall be held liable under any of said sections, shall be entitled to contribution from any other officer or director who shall have been liable hereunder or thereunder for such claim: *Provided,* That no officer or director, to whom such loan or advance is made or who shall himself make such overdraft or withdrawal, shall have any such right of contribution.''

It is urged by appellant that the paper company failed to prove valid and legal consideration for the note, and that because of the circumstances under which the note was issued, no consideration can be presumed. We are not in accord with this theory. The note in issue here is a negotiable promissory note which states that it was given ''for value received.'' Under the negotiable instruments law it is deemed prima facie to have been issued for valuable consideration.

''Every negotiable instrument is deemed prima facie to have been issued for valuable consideration; and every person whose signature appears thereon to have become a party thereto for value.'' 2 Comp. Laws 1929, § 9273 (Stat. Ann. § 19.66).

The note being in the hands of the immediate parties ''absence or failure of consideration is matter of defense.'' 2 Comp. Laws 1929, § 9277 (Stat. Ann. § 19.70).

In *Collateral Liquidation, Inc.,* v. *Manning,* 287 Mich. 568, 575, this court said:

''The prima-facie case raised by the presumption persists until evidence to the contrary is produced, *Steep* v. *Harpham,* 241 Mich. 652, * * * Nor would

defendant's denial that she received the proceeds of the loan be sufficient to rebut the presumption of consideration."

See, also, *In re Hubbard's Estate,* 286 Mich. 444.

The record contains no proof to overcome the presumption of consideration.

It is also urged by appellant that the transaction upon which the note was based was entered into contrary to the express provisions of Act No. 327, § 46, Pub. Acts 1931, therefore, the note was null and void and unenforceable by the corporation.

Prior to this time, we have not had occasion to construe the above section of the statute. The general rule is stated in 3 Fletcher, Cyclopedia, Corporations (Perm. Ed.), p. 335, § 955:

"A statute prohibiting a director of a corporation from borrowing any of its deposits or funds is intended for the protection of the stockholders and depositors or creditors, and does not preclude the corporation from suing a director to recover money loaned to him in violation of the statute, or from enforcing securities taken by it in the transaction."

See, also, 13 Am. Jur. 1941 Supp. § 1065, p. 24.

In *Lester* v. *Howard Bank,* 33 Md. 558, 565 (3 Am. Rep. 211), that court while construing a statute similar to the one before us, said:

"Under the rule thus laid down, which we regard as just and reasonable, the rights and remedies of parties growing out of prohibited contracts are to be determined by the construction of the statute itself according to the well-established rules of interpretation, and if it shall appear that it was not the intention of the legislature to declare the contract void, although made against the prohibition

this *intention* will be gratified, even if it should contravene some general rule of law.''

In *Brittan* v. *Oakland Bank of Savings,* 124 Cal. 282, 291 (57 Pac. 84, 71 Am. St. Rep. 58), the court relied upon an earlier California case and said:

''In *Savings Bank* v. *Burns,* 104 Cal. 473 (38 Pac. 102), the court in answering a similar contention that the transaction was void as being in contravention of the provision of the code, says: 'We do not think this contention can be sustained. The obvious purpose of the section of the code invoked and relied upon was to protect savings banks and their depositors. To hold, therefore, that if the deposits or funds of such a bank should be borrowed by any of its officers, directly or indirectly, no action could be maintained by the bank to recover the money, would often work out great injustice and wrong.' The bank, therefore, could have sued Bowman to recover back the money loaned, and it can hold the pledged stock or its proceeds in a suit for the recovery of the same until such money lent on the faith of such pledge is repaid.''

The rule advocated by appellant in the construction of the statute would place in the hands of unscrupulous directors the power to deplete the assets of a corporation by borrowing money from the corporation which they direct in violation of the act and then defend with complete immunity against recovery. We cannot accept this doctrine. Such a theory would deprive stockholders of their assets and leave them without remedy to recover what is rightfully theirs. It is our opinion that it was not the intent of the legislature in enacting this law to make all contracts in contravention of the act void in the sense that they may not be enforced in a court of justice. We, therefore, hold that the note is an enforceable contract by the corporation against one of its officers and directors. The note estab-

lished a prima-facie case; want of consideration was not shown. The judgment of the trial court upon this claim is affirmed.

It is urged that the corporation failed to prove a claim against the estate based upon an open account. In support of this claim the corporation introduced in evidence copies of the corporation records showing an open account by G. H. Wood. One witness identified the account as showing charges for materials and services rendered as well as payments made by the corporation for Mr. Wood. Evidence was also introduced that the records were kept in the regular course of business and in addition there was introduced in evidence the above quoted letter from Mr. Wood to Ernst & Ernst, Detroit, Michigan, dated March 2, 1939, in which testator admitted he owed $1,456.78 on an open account.

In *Wilson* v. *Prudential Ins. Co. of America,* 276 Mich. 232, we said:

"By the great and overwhelming weight of authority, books of account properly presented are admissible for whatever evidentiary force they may have in order to establish a claim against the deceased person despite statutes, like the one in Michigan, prohibiting testimony as to matters equally within the knowledge of the deceased." *

In our opinion there was competent evidence introduced to sustain the finding of the trial court and the judgment of the court on this claim is affirmed.

It is next urged by appellant that the trial court was in error in disallowing the claim of the estate against the corporation. This claim was based on a resolution of the board of directors of the cor-

---

* 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914).—REPORTER.

poration dated September 13, 1938, which reads as follows:

"It was moved by J. W. Walter, supported by J. F. Gray, that the salaries of the four executive officers, president, both vice-presidents and the secretary-treasurer, be paid for one year after date of death. Payments to be made in the established manner to executor of the decedent's estate or to a legal heir or heirs, to be determined at such time by the board. It being a matter of record that the deceased will have devoted his principal time and services to the company for a period of 10 or more years immediately prior to his demise or to have been drawing a salary for such period up to the time of his death. Further, that all other salaried employees qualifying shall have benefit of salary payments for two months after death in the manner hereinabove described."

"Resolution unanimously carried."

The facts connected with this resolution are not in dispute. George Harley Wood was president and general manager of the corporation for a period of 10 or more years immediately prior to his death; and since February, 1934, he received an annual salary of $24,000. On February 13, 1940, subsequent to the death of G. H. Wood, the board of directors passed a resolution rescinding the former resolution. This last resolution was adopted seven months after the death of Mr. Wood and subsequent to the filing of the claim by the estate against the corporation.

It is urged by the corporation that appellant has no authority to enforce the payment of the amount, inasmuch as no determination has been made by the board of directors as to whom the same should be paid. We are not in accord with this claim. It

was not the intention of the resolution to empower a board of directors to withhold payment by merely failing to act. Rather, we think it was the intent of the resolution that this sum be paid to the estate of deceased.

It is also urged that the resolution was merely a promise of a bonus to encourage the officers and employees to perform in accordance with their contract of employment; and that it was executory and unenforceable for want of consideration.

It is our opinion that corporations have a right to enter into such an agreement with their officers and employees.

"It has been held, for example, that an insurance company, for the purpose of increasing its business, may properly pay a customer for a loss not covered by his policy and for which it could not be held liable; that a manufacturing company may give away some of its goods for the purpose of advertising, that a corporation may give a bonus or pay extra wages to its workmen or other employees out of its undivided profits, for the purpose of advancing its interests, * * * or pay a pension to the family of a deceased officer." 6 Fletcher, Cyclopedia, Corporations (Perm. Ed.), § 2940, pp. 1014, 1015.

"There are cases that hold that under certain circumstances corporations may make donations or subscriptions in aid of certain enterprises that will tend, directly or indirectly, to increase the corporate business and thereby benefit the corporation and stockholders; and make gifts to families of a deceased officer, or pay extra wages to certain employees, and enter into contracts for advertising, and give away manufactured products for the purpose of advertising." 4 Thompson on Corporations (3d Ed.), § 2514, p. 129.

In *Nahikian* v. *Mattingly,* 265 Mich. 128, the court held:

"It is a well-settled rule of law that the authority of the directors is absolute when they act within the law, and that questions of policy and internal management are, in the absence of nonfeasance, misfeasance, or malfeasance, left wholly to their decision. Ratification by the board of directors of an increase in defendant's salary, if made in good faith and believed to be for the best interest of the company, validated the increase."

In the case at bar, the right of the estate arose out of the adoption of the resolution and the continuance in the employment of the corporation by George Harley Wood until his death. The rights of the estate became fixed upon the death of George Harley Wood. It must be assumed that the corporation adopted the resolution as an inducement to the officers and salaried employees to continue in its employ. Such an act constitutes an offer. It was accepted by G. H. Wood and performed upon his part.

In *Henderson Land & Lumber Co.* v. *Barber,* 17 Ala. App. 337 (85 South. 35), the court said:

"There is no mutuality in a unilateral contract, until the party claiming under it has complied with the terms of the proposition. When, however, one makes a promise conditioned upon the doing of an act by another, and the latter does the act, the contract is not void for want of mutuality, and the promisor is liable; for upon performance of the conditions by the promisee the contract becomes clothed with a valid consideration which relates back and renders the promise obligatory. 6 R. C. L. p. 687, § 94. It is an elementary principle that, where one publishes an offer, and before it is with-

drawn another acts upon it, the one making the offer is bound to perform the promise; in other words, the act becomes binding when the act is performed.''

In our opinion, the claim against the corporation for such services is a valid claim against the corporation. Judgment of the trial court upon this issue is reversed.

Judgment affirmed and modified. Estate may recover costs.

BUSHNELL, BOYLES, CHANDLER, NORTH, STARR, WIEST, and BUTZEL, JJ., concurred.