VISIONEERING INCORPORATED PROFIT SHARING TRUST v
BELLE RIVER JOINT VENTURE

Docket No. 81152. Submitted October 3, 1985, at Detroit.—Decided
February 18, 1986.

In June, 1970, the Belle River Joint Venture executed a mortgage
in favor of Visioneering Incorporated Profit Sharing Trust in
the principal sum of $35,000, securing and incorporating four
previous notes. The mortgage contained a covenant to pay the
indebtedness and interest. Interest was to be at eight percent
per annum on the unpaid principal and at seven percent per
annum on all overdue principal and interest. In December,
1971, Belle River executed a mortgage and mortgage note in
favor of Visioneering Incorporated Retirement Trust in the
principal sum of $10,000. The mortgage contained a covenant
to pay the indebtedness and interest. Interest was to be at the
rate of seven percent per annum on the unpaid principal and
at the rate of eight percent per annum on any overdue princi-
pal and interest. In February, 1979, Joseph P. Ciaramitaro
executed a $5,000 mortgage note in favor of Visioneering
Incorporated Retirement Trust in his individual capacity, but
on the same date that the note was executed the Retirement
Trust issued a check in the amount of $5,000 to Belle River.

REFERENCES

Am Jur 2d, Appeal and Error §§ 545 et seq.

Am Jur 2d, Limitation of Actions §§ 133, 395, 422-430.

Am Jur 2d, Mortgages § 601.

Am Jur 2d, New Topic Service Pension Reform Act § 140.

Am Jur 2d, Trial §§ 463-558, 1245.

Pre-emption of state fair employment laws under provisions of
section 514 of Employee Retirement Income Security Act (29
USCS § 1144). 72 ALR Fed 489.

Power of court sitting as trier of fact to dismiss at close of plaintiff's
evidence, notwithstanding plaintiff has made out prima facie
case. 55 ALR3d 272.

Agreement of parties as estopping reliance on statute of limitations.
43 ALR3d 756.

Application to period of limitations fixed by contract, of statute
permitting new action to be brought within specified time after
failure of prior action for cause other than on the merits. 16
ALR3d 452.

Ciaramitaro was, until his death in 1980, a partner in Belle River, a trustee of each of the trusts and an officer of Visioneering, Inc., and exercised virtual control over both of the trusts and Belle River. In January, 1982, the trusts brought an action in St. Clair Circuit Court against Belle River, seeking to recover past due principal and interest payments on the notes. Defendant raised the defenses of statute of limitations, usury and statute of frauds. Following a bench trial, the trial court, Ernest F. Oppliger, J., held that the action on the mortgages was timely brought, that the defense of usury was preempted by the provisions of the federal Employee Retirement Income Security Act and that there was no statute of frauds problem and entered a judgment in favor of plaintiffs in the amount of $107,397.01 plus interest and cost. Defendant Appealed. *Held:*

1. Since plaintiffs' pleadings established their right to recover, the trial court properly denied the motion to dismiss based on the lack of particularity in plaintiffs' opening statement.

2. Where, as here, a trial court is sitting as the trier of fact, the trial court may properly decline to grant a motion to dismiss made at the close of the plaintiffs' proofs and insist upon waiting until the close of all proofs before rendering a judgment. Accordingly, the trial court properly declined to grant defendant's motion to dismiss made at the close of plaintiffs' proofs.

3. Since plaintiffs' action was based upon mortgage convenants, the applicable limitation period is ten years.

4. All payments except the first interest payment on the 1970 mortgage came due within ten years before the commencement of plaintiffs' action and are thus not subject to the defense of the running of the statutory period of limitation. As to that first interest payment, defendant is estopped to raise the defense of the running of the statutory period of limitation, since plaintiffs' trusts were effectively within the control of Joseph Ciaramitaro, who was also financially involved with defendant until his death in 1980.

5. The interest provisions of the mortgages are in violation of the Michigan usury statute to the extent that those provisions provide for eight percent interest on unpaid principal and for interest on overdue principal.

6. The provisions of the federal Employee Retirement Income Security Act do not preempt the operation and applicability of state usury laws, since the effect of the state laws upon the objectives of the federal act is, at best, tenuous.

7. Neither of the mortgages executed by defendant is viola-

tive of the statute of frauds and the question of mutuality of obligation with respect to those mortgages was never raised below and cannot now be raised on appeal.

8. There was adequate evidence to establish that the 1979 loan of $5,000 was made by plaintiff Retirement Trust to defendant. However, the only evidence as to defendant's obligation with respect to that loan was that defendant promised to repay to plaintiff Retirement Trust the $5,000, there being no evidence of any additional terms such as the payment of interest. Accordingly, the trial court's award of interest with respect to the 1979 loan must be vacated.

Affirmed in part, reversed in part, and remanded.

1. TRIAL — DIRECTED VERDICT.

A directed verdict after opening statement is proper only when the opening statement plus the pleadings fail to establish a right to recover in the nonmoving party; where the pleadings adequately establish a right to recover, a directed verdict should not be granted merely because of the lack of particularity in the opening statement.

2. MOTIONS AND ORDERS — MOTION TO DISMISS — BENCH TRIAL.

A trial court sitting as the trier of fact may, when confronted with a motion to dismiss at the close of the plaintiff's proofs, decline to render any judgment until the close of all the evidence (GCR 1963, 504.2).

3. LIMITATION OF ACTIONS — MORTGAGES — COVENANT TO PAY.

The statutory period of limitation on an action for payment of money owed pursuant to covenants contained in a mortgage is ten years (MCL 600.5807; MSA 27A.5807).

4. LIMITATION OF ACTIONS — INSTALLMENT CONTRACT — ACCRUAL OF ACTION.

Claims based on an installment contract ordinarily do not accrue until the installment becomes due, in the absence of an acceleration clause; accordingly, the statutory period of limitation runs separately as to each installment as it becomes due (MCL 600.5836; MSA 27A.5836).

5. DEBTOR AND CREDITOR — LIMITATION OF ACTIONS — ESTOPPEL.

A debtor is estopped from raising the defense of the running of the statutory period of limitation in an action brought by a creditor for nonpayment of a debt where an agent of the debtor is in a position of authority with the creditor such that the agent of the debtor is able to prevent the creditor from proceeding with an action on the debt in a timely fashion.

6. USURY — EMPLOYEE RETIREMENT INCOME SECURITY ACT — PREEMP-
   TIONS.

   Loans made by an employee benefit plan trust which is subject to
   the federal Employee Retirement Income Security Act are
   subject to the provisions of state usury laws, since the preemp-
   tion provision of the federal act was not intended to be applied
   to state usury laws (29 USC 1144).

7. APPEAL — PRESERVING QUESTION.

   Issues not raised in the trial court are not preserved for appellate
   review.

*Breskin & Gunsberg, P.C.* (by *Lawrence J. Bres-
kin),* for plaintiffs.

*Robert H. Golden,* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and R. B.
BURNS and K. B. GLASER,* JJ.

R. B. BURNS, J. Defendant appeals from a judg-
ment of the trial court awarding plaintiffs
$107,397.01, plus interest and cost. This dispute
concerns various notes executed by defendant in
favor of plaintiffs. On June 10, 1970, defendant
executed a mortgage in favor of plaintiff Profit
Sharing Trust in the principal sum of $35,000,
securing and incorporating four previous mortgage
notes. On December 20, 1971, defendant executed
a mortgage and mortgage note in favor of plaintiff
Retirement Trust for the principal amount of $10,-
000. Finally, on February 6, 1979, Joseph P. Ciara-
mitaro executed a mortgage note for $5,000 in
favor of the Retirement Trust. Although there is
no indication that Ciaramitaro was signing this
note in a representative capacity for defendant, a
check for $5,000 was issued on the same day by
the Retirement Trust to the order of defendant.

Ciaramitaro was a partner in Belle River, a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

trustee of the Profit Sharing Trust and the Retirement Trust, and an officer of Visioneering, Inc. Apparently, Ciaramitaro exercised virtual control over both the trusts and Belle River. When Ciaramitaro died in 1980, defendant had not made any payments on either principal or interest for the above listed loans and mortgages. On January 8, 1982, plaintiffs filed a complaint in St. Clair County Circuit Court seeking to recover past due principal and interest payments. Judgment was entered in favor of plaintiffs following a bench trial.

Defendant raises a number of issues on appeal, which we have consolidated and restate as follows:

I. Whether defendant's motion to dismiss following plaintiffs' opening statement was erroneously denied.

II. Whether the trial court erroneously denied defendant's motion to dismiss at the close of plaintiffs' proofs.

III. Whether the statute of limitations bars recovery in part.

IV. Whether the notes and mortgages provide for usurious interest rates.

V. Whether the mortgages were rendered nullities by a lack of mutuality of obligation and/or by the statute of frauds.

VI. Whether defendant is liable on the note of February 6, 1979.

VII. Whether the failure to apportion damages between plaintiffs presents reversible error.

We first consider whether defendant's motion to dismiss following plaintiffs' opening statement should have been granted. In *Bell v Merritt,* 118 Mich App 414, 418; 325 NW2d 443 (1982), this Court stated:

"A directed verdict after opening statement is proper

only when the opening statement *plus the pleadings fail* to establish plaintiff's right to recover. *Ambros v Detroit Edison Co,* 380 Mich 445, 453-455, 459-460; 157 NW2d 232 (1968)." (Emphasis added.)

Defendant maintains that plaintiffs allegedly failed in their opening statement (1) to specify the cause of action alleging breach of covenants in a mortgage and (2) to set forth the elements to support such a claim. However, plaintiffs' complaint clearly establishes that they were suing on promises to pay contained in the mortgages as well as the promissory notes. Since the pleadings adequately establish plaintiffs' right to recover, the granting of a directed verdict for lack of particularity in the opening statement would have been improper. *Bell, supra.* Accordingly, defendant's argument is without merit.

We next consider whether the trial court improperly declined to grant defendant's motion to dismiss at the close of plaintiffs' proofs. At the close of plaintiffs' proofs, defendant moved to dismiss for failure to show a right to relief under GCR 1963, 504.2. The trial court declined to grant the motion. GCR 1963, 504.2, by its own terms, authorizes a trial judge sitting as the trier of fact to defer consideration of such a motion until the close of all the evidence. Thus, we conclude that the trial judge could properly insist on waiting until the close of all proofs before rendering judgment.

We turn our attention next to the question of whether the period of limitation had run with respect to any portion of plaintiffs' claims. MCL 600.5807; MSA 27A.5807 provides that the period of limitation for actions founded upon covenants in mortgages is ten years, while the limitation period for actions arising out of promissory or mortgage

notes is six years. Each of the two mortgages which were used to secure the underlying notes herein contained the following covenant:

"[T]he mortgagor covenants with the mortgagee, while this mortgage remains in force, as follows:
"1. To pay said indebtedness and the interest thereon in the time and in the manner above provided."

The trial judge correctly held that these covenants were subject to the ten-year period of limitation.

Furthermore, "claims on an installment contract do not ordinarily accrue until the installment becomes due in the absence of an acceleration clause in the contract". *Petovello v Murray,* 139 Mich App 639, 645; 362 NW2d 857 (1984), citing MCL 600.5836; MSA 27A.5836. Thus, the statutory period of limitation runs separately as to each installment as it becomes due. *Collateral Liquidation, Inc v Renshaw,* 301 Mich 437, 444; 3 NW2d 834 (1942).

Plaintiffs filed their complaint on January 8, 1982. The June 10, 1970, mortgage provided that the first interest payment, totaling $2,800, was due on June 10, 1971. All other payments of interest and principal became due within ten years of the filing of the complaint. Thus, we limit our discussion to whether the statutory period of limitation was tolled as to the June 10, 1971, interest payment.

We first consider whether the period of limitation was tolled because of a fraudulent concealment. MCL 600.5855; MSA 27A.5855 provides as follows:

"If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from

the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations."

We do not believe that this statute is applicable as the testimony indicates that there was no concealment of the fact that the loans were in default. At trial, William Alexander testified that he had been a trustee of both trusts since 1975, had kept records for the trusts prior to 1975, and is a partner in Belle River. He further testified that he was aware that the loans were in default and discussed payment with Ciaramitaro.[1] Thus, at

---

[1] Alexander testified as follows:

"*Q.* Mr. Alexander, did you, as financial officer of Visioneering and a trustee of these trusts since 1975, attempt to bring a lawsuit for the collection of any of these?

"*A.* I was not a financial officer of Visioneering, only after Joe's death in 1980.

"*Q.* I apologize, I will rephrase the question.

"Since you are a trustee of both of the trusts since 1975, have you attempted to bring a lawsuit for the collection of these funds?

"*A.* No.

"*Q.* Why not?

"*A.* Because it was controlled by Joseph Ciaramitaro.

"*Q.* How was it controlled by him?

"*A.* Well, he was the one that run the whole thing.

"*Q.* You were a trustee?

"*A.* I worked for him.

"*Q.* Did you talk to him about it?

"*A.* Yes, we discussed the payment.

"*Q.* Did you ever demand payment on these notes?

"*A.* No.

"*Q.* Now, there was no payment on any of these notes at any time?

"*A.* No.

"*Q.* Did you treat that in your financial records in any way?

"*A.* As far as whose records?

"*Q.* As far as those records of the trust that you were creating, from time to time did you in any way docket, book, journalize, or otherwise retrieve the fact there had been no payment on these transations and some cases fifteen years?

least two of plaintiffs' trustees, Ciaramitaro and Alexander, were aware of the existence of the cause of action. Although their inaction may constitute a breach of their fiduciary duties, we do not believe it constitutes a fraudulent concealment since the cause of action was always known to plaintiffs and was never concealed.

However, plaintiffs, both at trial and on appeal, advance a second theory for the tolling of the period of limitation, namely the principles of estoppel. Plaintiffs rely on *Nahikian v Mattingly*, 265 Mich 128; 251 NW 421 (1933). In that case, the defendant occupied the positions of president, director, and general manager, and had various patents placed in his name when those patents rightfully belonged to the corporation. The defendant raised a statute of limitations defense, but the Supreme Court ruled he was estopped from raising it:

"Considering the dominance of defendant, the trust relation under which the patents were taken in his name, the evident understanding that the patents belonged to the company, at least until the royalty contract was made in 1929, estops defendant from invoking the statute of limitations." 265 Mich 133.

We recognize that *Nahikian* arose under a different set of facts and involved a corporation suing its fiduciary directly, while in the case at bar defendant was not a fiduciary of plaintiffs. However, we believe that the principle of estoppel nevertheless applies.

"*A.* It was a matter of record, it shows on the books it was not paid.
"*Q.* Did you ever write them off the books?
"*A.* No.
"*Q.* Why not?
"*A.* I was told by Mr. Ciaramitaro they were going to be paid. He gave me the assurance they were going to be paid."

As indicated by the testimony of Alexander quoted in footnote 1, *supra,* Ciaramitaro was able to use his position and influence in controlling plaintiffs to prevent plaintiffs from bringing suit on the defaulted mortgages. At the same time, Ciaramitaro was defendant's agent and, according to Alexander, possessed the largest interest in defendant, approximately 20%. Thus defendant was able to benefit by virtue of the actions, or inactions, of its agent who possessed a fiduciary relationship with plaintiffs and, it appears, had *de facto* control over plaintiffs. We agree with the trial court that the facts surrounding Ciaramitaro's involvement are sufficient to justify applying the doctrine of estoppel.

We, therefore, conclude that defendant is estopped from raising the statute of limitations as a defense to the June 10, 1971, interest payment and affirm the trial court's disposition of this issue.

We now turn to the issue of whether the loans carried usurious interest rates and, if so, whether federal law preempts our state usury statutes in this case. The learned trial judge concluded that the Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.,* preempts state usury laws when applied to employee benefit plans subject to ERISA. We disagree and reverse.

Before considering whether the state usury statutes are preempted, we must answer the more basic question of whether the loans in question violate those statutes. MCL 438.32; MSA 19.15(2) provides:

"Any seller or lender or his assigns who enters into any contract or agreement which does not comply with the provisions of this act or charges interest in excess of that allowed by this act is barred from the recovery of any interest, any official fees, delinquency or collection

charge, attorney fees or court costs and the borrower or buyer shall be entitled to recover his attorney fees and court costs from the seller, lender or assigns."

MCL 438.31; MSA 19.15(1) limits the rate of interest on these mortgages to seven percent per annum. MCL 438.101; MSA 19.21 permits the computing of interest at a rate not exceeding ten percent (or the amount specified in the mortgage) on any due and unpaid installments of interest, but not principal.

The December 20, 1971, mortgage provided for interest at a rate of seven percent per annum on the unpaid principal, and interest at eight percent per annum on any overdue principal and interest. To the extent that this instrument provided for interest at eight percent per annum on overdue principal, it was usurious. The June 10, 1970, mortgage provided for interest at eight percent per annum on the unpaid principal and for interest at the rate of seven percent per annum on all overdue principal and interest. To the extent that this instrument set the interest at eight percent per annum on principal and provided for interest on overdue principal, it violated the usury statute.[2]

Having concluded that MCL 438.32; MSA 19.15(2) bars recovery of part of the interest payments, we must now determine whether that statute is preempted by ERISA. 29 USC 1144 provides in pertinent part as follows:

---

[2] The trial court relied on *Michigan Mobile Homeowners Ass'n v Bank of the Commonwealth,* 56 Mich App 206; 223 NW2d 725 (1974), for the proposition that the usurious nature of a contract will be determined at the time that the usury defense is asserted rather than as of the time the contract is made. The trial court further concluded that the interest rates in the mortgages, although usurious when written, are now permissable. Although the trial court cites to no statutory authority, we presume that it relied upon MCL 438.31c(2); MSA 19.15(1c)(2). In any event, we do not read *Michigan Mobile Homeowners* as standing for that proposition. Rather, we believe that if a loan is usurious at the time of its creation, it remains usurious.

"(a) Except as provided in subsection (b) of the section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

"(b)(1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.

*   *   *

"(c) For purposes of this section:

"(1) The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States.

"(2) The term 'State' includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter."

Our research has failed to reveal any decision in any jurisdiction which construes this preemption provision as applied to state usuary laws. However, the United States Supreme Court, in *Shaw v Delta Air Lines, Inc,* 463 US 85, 98; 103 S Ct 2890; 77 L Ed 2d 490 (1983), concluded that the preemption provisions were to be given broad applicability:

"In fact, however, Congress used the words 'relate to' in § 514(a) in their broad sense. To interpret § 514(a) to preempt only state laws specifically designed to affect employee benefit plans would be to ignore the remainder of § 514. It would have been unnecessary to exempt generally applicable state criminal statutes from pre-

emption in § 514(b), for example, if § 514(a) applied only to state laws dealing specifically with ERISA plans."[3]

However, the Court in *Shaw* was considering a statute very much different than the usury statute involved in the present case. The statute in *Shaw* was a New York statute which prohibited discrimination in employee benefit plans on the basis of pregnancy. Although the Court explicitly stated that state statutes would be preempted even if they dealt with subjects not directly covered by ERISA, 463 US 98, the Court did note that some state statutes would not be sufficiently related to a benefit plan to warrant preemption:

"Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan. *Cf. American Telephone and Telegraph Co v Merry,* 592 F2d 118, 121 (CA 2, 1979) (state garnishment of a spouse's pension income to enforce alimony and support orders is not preempted). The present litigation plainly does not present a borderline question, and we express no views about where it would be appropriate to draw the line." 463 US 100, fn 21.

Although the Supreme Court declined to offer a view on which state statutes would be outside the scope of the ERISA preemption provisions, a district court has concluded that ERISA does not preempt general state contract law:

"Regulation of contract falls within the realm of state law. The involvement of a pension plan is a remote rather than a central consideration in this case. The central factor is the contract negotiated at arms-length by Sonotone, Pindyck, Gould and the Union. Thus, this Court concludes that ERISA does not apply in the instant case because relevant state laws only in the

---

[3] Section 514 of ERISA is compiled at 29 USC 1144.

most remote and peripheral manner touch upon pension plans." *Gould, Inc v Pension Benefit Guaranty Corp,* 589 F Supp 164, 168 (SD NY, 1984).

In *Gould,* Sonotone Corporation (the contributing employer) entered into a settlement agreement, whereby it agreed to pay the pension fund $188,-000. The plaintiff guaranteed this obligation to the extent of $100,000. When Sonotone defaulted, the plaintiff commenced an interpleader action, as there was a dispute as to whether the pension fund or individual claimants should receive the money. The pension fund counterclaimed for interest and contended that New York law precluding prejudgment interest unless a guaranty agreement was breached was preempted by 29 USC 1144. the court found no breach of the guaranty agreement and that ERISA did not preempt state law and, therefore, the surety was not liable for interest.

We believe that the *Gould* decision is in accord with the Supreme Court decisions and properly interprets ERISA. We, therefore, apply the *Gould* reasoning to the case at bar and conclude that ERISA preemption provisions are not applicable to the case at bar.

Any connections between the usury statute and ERISA is very tenuous. ERISA was designed to protect the interests of employee benefit plan beneficiaries. 29 USC 1001(b) and 1001(c). Usury laws, on the other hand, do not specifically concern benefit plans. They are general commercial laws designed to "protect the necessitous borrower from extortion". *Wilcox v Moore,* 354 Mich 499, 504; 93 NW2d 288 (1958).

We recognize that usury laws do affect benefit plans, in some cases, by limiting the investment options of the plans' trustees. That is, a prudent investor might choose not to make certain invest-

ments even at the maximum interest rate permitted under the usury laws. However, we cannot conclude that Congress intended to permit benefit plans to escape the control of our usury laws. If plans subject to ERISA are exempted from state usury laws, then those usury laws are rendered meaningless as a borrower unable to obtain a loan at the maximum legal rate could approach a trust fund subject to ERISA and negotiate a loan which would otherwise be usurious.[4]

If the footnote in the *Shaw, supra,* opinion, which was quoted above, has any applicability, then it surely applies to the case at bar. We, therefore, conclude that the trial court erred in determining that ERISA preempted state usury laws where the lender was an employee benefit plan subject to ERISA.

Defendant's next claim is that the mortgages were rendered nullities due to a failure to comply with the statute of frauds and/or for a lack of mutuality of obligation.

It is unclear from defendant's brief whether it is raising the statute of frauds defense as to the June 10, 1970, mortgage only or as to both mortgages. For purposes of our discussion, we will assume that both mortgages are being challenged.

MCL 566.132; MSA 26.922 provides in pertinent part:

"In the following cases an agreement, contract or promise shall be void, unless that agreement, contract, or promise, or a note or memorandum thereof is in writing and signed by the party to be charged therewith, or by a person authorized by him:

"(a) An agreement that, by its terms, is not to be performed within 1 year from the making thereof."

[4] We note that the criminal usury law, MCL 438.41; MSA 19.15(51), rendering felonious interest rates in excess of 25% per annum, would likely be enforceable under 29 USC 1114(b)(4).

Defendant erroneously claims that plaintiffs are "the [parties] to be charged". Since plaintiffs are seeking to enforce the mortgages, defendant is the party being charged. Furthermore, both mortgages were signed by representatives of defendant. There is no violation of the statute of frauds.

Defendant also maintains that these mortgages lacked mutuality of obligation. This argument was never raised in the trial court and, therefore, has not been preserved for appeal. In any event, these mortgages were not illusory and did not lack consideration.

Defendant next argues that it cannot be held liable on the February 6, 1979, note. On February 6, 1979, Ciaramitaro, in his individual capacity, executed a mortgage note for $5,000 in favor of the Retirement Trust. On the same day, the Retirement Trust issued a check to Belle River for $5,000. Alexander, defendant's accountant, testified that Ciaramitaro took out the loan in order to cover defendant's overdrawn checking account. The Retirement Trust's accounting records apparently showed that this loan was made to defendant. Moreover, defendant entered the transaction as a loan in its books on February 6, 1979, and its bulk sales affidavit dated November 30, 1981, indicated that the $5,000 was an outstanding loan from the Retirement Trust.

Defendant argues that the note signed by Ciaramitaro evinces only an obligation of Ciaramitaro in his individual capacity to pay the Retirement Trust $5,000. This note certainly evinces such an obligation. However, the mere existence of this note does not necessarily bar a finding that an oral contract existed between defendant and the Retirement Trust, whereby the Retirement Trust loaned defendant $5,000.

In our opinion, the check to defendant from the

Retirement Trust, coupled with Alexander's testimony that this was intended as a loan to defendant, provided sufficient evidence to find that an oral contract did exist between defendant and the Retirement Trust. However, the only evidence of this contract, independent of Ciaramitaro's separate obligation, was that defendant promised to pay the Retirement Trust $5,000. There is no evidence of any additional terms, *i.e.,* there is no indication that defendant agreed to pay interest on this amount. The Retirement Trust is not seeking to enforce the note against Ciaramitaro and the only evidence of the oral contract between defendant and the Retirement Trust is the check, the bulk sales agreement, and Alexander's testimony. Since this evidence only shows an obligation to repay $5,000, we conclude that the contract can only be enforced to the extent of $5,000. The trial court's award of interest is vacated.

Finally, defendant argues that the trial court should have apportioned damages as to each plaintiff rather than alloting a lump sum to both plaintiffs. We find this issue to be so frivolous as not to merit discussion.

Affirmed in part and reversed in part. This case is remanded to the trial court for entry of an amended judgment consistent with this opinion. We do not retain jurisdiction. No costs, neither party having prevailed in full.