# STATE OF MICHIGAN

# COURT OF APPEALS

SANDRA PLETOS and MITCHELL PLETOS,

        Plaintiff/Counter-Defendants-
Appellants,

v

LAKE IN THE WOODS HOMEOWNERS
ASSOCIATION,

        Defendant/Counter-Plaintiff-
Appellee.

UNPUBLISHED
April 14, 2015

No. 319087
Macomb Circuit Court
LC No. 2012-004997-CZ

Before: M. J. KELLY, P.J., and WILDER and K. F. KELLY, JJ.

PER CURIAM.

Plaintiffs/counter-defendants-appellants, Sandra Pletos and Mitchell Pletos (plaintiffs), appeal as of right a judgment awarding $20,552.64 to defendant/counter-plaintiff/appellee, Lake in the Woods Homeowners Association (defendant), and ordering plaintiffs to pay any additional attorney fees reasonably incurred by defendant in collecting "sums due and owing" to defendant. Plaintiffs also challenge earlier orders granting summary disposition of their complaint to defendant, granting summary disposition of the countercomplaint, in part, to defendant, and denying their motion for reconsideration. We affirm.

I

According to plaintiffs' complaint, they purchased a lot in the Lake in the Woods neighborhood in 1995, and subsequently built a home on the lot. Article II, § 2 of defendant's declaration of easements, covenants, conditions, and restrictions (declarations) provides, "All owners of Lots within Lake in the Woods sub., shall be members of the Association by virtue of ownership of a Lot." All lot owners were obligated by Article IV, § 2 of the declarations to pay: (1) annual general assessments or charges, and (2) special assessments for capital improvements, and lot owners of lots adjacent to Golden Pond or Jewell Lake were obligated to pay: "(1) annual Lake Lot assessments or charges and (2) Lake Lot special assessments when deemed necessary for capital expenditures related to the long term maintenance and operation of the Lake to which such Lake Lot Owner is adjacent."

Article IV, § 2 of the declarations also provided, "All annual and special assessments, whether general or related to the Lake Lots, together with interest, costs and reasonable

-1-

attorneys' fees, shall from date of assessment be a charge and a continuing lien upon the Lot against which each such assessment is made." On January 25, 2007, a lien for nonpayment of association dues in the amount of $1,259.53 was recorded by defendant on plaintiffs' property. On January 26, 2012, another lien in the amount of $6,271.74 was recorded by defendant on plaintiffs' property.

In November 2012, plaintiffs filed a 15-count complaint against defendant—a nonprofit corporation. In Count I, plaintiffs alleged defendant violated its bylaws. Plaintiffs claimed they were denied the opportunity to speak at meetings, the Board allowed delinquent lot owners to serve as active members of the Association, the Board failed to establish an annual budget according to the bylaws from 2005 to 2012, the Board misallocated funds, failed to safeguard reserves, and failed to make special assessments for capital improvements, the Board did not uniformly assess late charges for delinquent assessments, annual meetings were not held timely, with the appropriate quorum, or according to the proper "order of business," Board officers were not replaced timely and did not fulfill their individual responsibilities, the Board did not maintain detailed books of expenditures and receipts, failed to offer the books, in full, for plaintiff's review, and either committed acts of fraud or failed to rectify wrongs by previous members.

In Count II, plaintiffs alleged violations of the declarations. Specifically, plaintiffs contended that the common areas were not appropriately maintained, assessments and late charges were improperly assessed, elections of officers and meetings were mishandled, liens were not recorded and foreclosed according to the declarations and as required by MCL 565.25, Board officers killed wild animals, Board officers had commercial vehicles and campers in their driveways, and defendant failed to collect and maintain the building deposit fund.

In Count III, plaintiffs alleged violations of the Nonprofit Corporation Act, MCL 450.2101 *et seq.*, including requirements (1) to file an annual report, (2) to file documents for reinstatement, (3) to appoint a successor resident agent, (4) to allow plaintiffs to review documents, (5) to distribute financial statements to members, and (6) to replace directors and officers.

In Count IV, plaintiffs alleged that the Articles of Incorporation were violated and incorporated its allegations in Counts I, II, and III. In Count V, plaintiffs alleged that, in 2005, interest was assessed at 8.5 percent, which violated defendant's covenants and Michigan's usury law (MCL 438.31).

In Counts VI through XI, plaintiffs alleged violations for the Fair Debt Collection Practices Act (FDCPA), 15 USC 1692 *et seq.* Citing 15 USC 1692e, plaintiffs alleged that defendant failed to demonstrate intent to take action on the lien recorded in 2007, defendant threatened to take action on assessments that were not collectable, the Board failed to respond to plaintiffs' dispute about the liens—using inappropriate language with plaintiffs—and defendant turned over false account information to its law firm to collect the debt. Moreover, citing of 15 USC 1692(g), plaintiffs alleged the debt was not verified.

In Count XII, plaintiffs alleged that defendant failed to file the appropriate forms regarding payments for services over $600, failed to notify the IRS regarding a change in its method of accounting, and failed to file tax return form 1120-H. In Count XIII, plaintiffs alleged

that defendant illegally used commercial-grade fireworks for personal use in violation of 1931 PA 328. In Counts XIV and XV, plaintiffs alleged slander of title.

Defendant filed an answer denying plaintiffs' allegations and a countercomplaint against plaintiffs seeking to collect unpaid assessments totaling $6,701.49 along with costs and fees of $1,225.08. Defendant also filed a demand for a jury trial of all issues in the case.

In an answer to defendant's countercomplaint and an accompanying motion for summary disposition of that claim, plaintiffs maintained that defendant could not require payment before resolving many of the same issues asserted in plaintiffs' complaint. In response, defendant argued, *inter alia*, that none of plaintiffs' claims relieved them of the obligation to pay assessments.

In April 2013, defendant filed a motion for a protective order regarding discovery, objecting to plaintiffs' notice of taking 17 depositions, 46 requests to admit, and 81 interrogatories. Defendant claimed that plaintiffs' "barrage of discovery is abusive, oppressive, and designed to harass Defendant and has no legitimate purpose since Plaintiffs have possession of Defendant's records which in fact Plaintiffs reviewed and copied and/or photographed." In their answer, plaintiffs argued that the requests for discovery were not unreasonable given the complexity of the charges in their complaint. Moreover, plaintiffs argued that discovery should be permitted if it is at all possible that it will lead to admissible evidence.

At the hearing, defendant suggested that plaintiffs depose a smaller number of people with the most information regarding their case. Plaintiffs' counsel responded that she actually did not want to depose all 17 people. When the trial court asked which three deponents plaintiffs' counsel would prefer, she requested Roger Papa, Giovan Agazzi, and Pasquale Casasanta. The trial court ordered that plaintiff could depose those three deponents until further order of the court.

In May 2013, defendant moved for summary disposition of the countercomplaint. Defendant argued that, *inter alia*, there was no genuine issue of material fact that plaintiffs had not paid the annual assessments between 2005 and 2013. Defendant supported the motion with an affidavit from Roger Papa—a current officer of the Board—regarding the amounts owed to defendant. Defendant urged the trial court to enter a judgment against plaintiffs for the unpaid assessments as well as interest, late fees, and attorney fees and costs incurred for the matter.

Defendant also moved for summary disposition of plaintiffs' complaint. Defendant argued that no genuine issue of material fact existed that it did not breach its covenants with plaintiffs and plaintiffs suffered no damages any alleged breaches. Defendant attached Papa's affidavit, which provided that, consistent with the covenants, defendant provided maintenance for the neighborhood, collected assessments according to the bylaws, and paid its bills. Defendant argued that there was no evidence that it had exercised its duties in bad faith or breached a fiduciary duty. Therefore, plaintiffs failed to state a claim under the nonprofit corporation act.

Defendant argued that plaintiffs' claim in Count V regarding usury was not an "affirmative remedy" but instead should be construed as a defense to defendant's counterclaim

for unpaid assessments. Defendant also argued that plaintiffs failed to state FDCPA claims as a matter of law in Counts VI through XI because defendant was not a debt collector and it was attempting to collect a debt on its own behalf. Regarding Count XII, defendant argued that plaintiffs failed to state a claim because, on its face, the internal revenue statute does not create a private cause of action. Citing Papa's affidavit that defendant's funds were not used to purchase fireworks, but members may have brought fireworks to defendant's party, defendant argued that plaintiffs failed to establish a genuine issue of material fact in Count XIII regarding 1931 PA 328. Defendant argued that plaintiffs failed to state a claim in Counts XIV and XV because, as members of defendant, they were required to pay assessments and a lien could be recorded for the failure to pay assessments. Defendant also argued that many of plaintiffs' claims were barred by the statute of limitations.

In July 2013, plaintiffs responded to defendant's motion for summary disposition of its counterclaim, arguing *inter alia*, that they were not obligated to pay the assessments because they were denied membership, they were not provided with defendant's documents, other members were given preferential treatment, and interest exceeded the 7% allowed by the covenants and MCL 438.31.

Plaintiffs also responded to defendant's motion for summary disposition of its complaint. Plaintiffs cited in passing Exhibits A through FFF "supporting Plaintiffs' claims." Plaintiffs promised to testify regarding how every exhibit demonstrated their claim and that every exhibit established a question of fact regarding, *inter alia*, misallocating funds, failing to establish a budget, failing to keep adequate records and file tax returns according to IRS regulations, and violating fireworks laws. Plaintiffs asserted that a chart in Exhibit GGG demonstrated the damages to members of defendant and that a tape recording in Exhibit HHH contained alleged admissions of misappropriation.

Plaintiffs further argued that dues are debts as defined by the FDCPA, so defendant was a debt collector. Regarding the slander of title claim, plaintiffs argued they would show the assessments were not valid, so the lien was not perfected and unenforceable. Plaintiffs claimed that malice could be inferred from inconsistent assessment of late fees and interest against members, emails from a president of the board, and "several tape recorded conversations/meetings" in Exhibit HHH. Plaintiffs did not explain what content in the emails or recordings could lead to an inference of malice.

Plaintiffs also argued that three depositions were outstanding and further facts could be developed to support their claims. In addition, plaintiffs claimed that defendant failed to plead the statute of limitation defense in accordance with MCR 2.111(F)(3) and the defense was barred.

In a reply brief, defendant noted that it had erroneously argued that plaintiffs had made no payments since 2004. Rather, it acknowledged partial payment by plaintiffs in 2012, in the amount of $363.56. Also in the reply, defendant noted plaintiffs' overall failure to create a genuine issue of material fact by relying on facts in the record to support their claim. For example, defendant argued that plaintiffs failed to explain why the interest calculations were incorrect and created no issue of fact. In addition, defendant requested leave to amend its answer to include the statute of limitations defense under MCR 2.118(A)(1) and (2).

At the end of July 2013, the trial court entered an opinion and order granting defendant's motions for summary disposition. In its analysis, the trial court noted, "As a preliminary matter, plaintiffs' complaint and affirmative defenses contain mere allegations and not evidence of anything. Similarly, plaintiffs' unsubstantiated comments on exhibits are also not evidence." The trial court ruled that defendant's answer would be deemed amended to include the statute of limitations defense, as defendant pleaded laches and plaintiffs would not suffer any undue prejudice from the amendment.

Regarding Counts I to IV, the trial court concluded that defendant "properly supported its request for summary disposition" and plaintiff merely "referenced their voluminous exhibits . . . in support of their claims," but the trial court noted that it had "no duty to scour the record to find support for a party's positions; a party's brief must identify the facts—by specific reference to the exhibits and record—that support its claims in order to survive summary disposition." Moreover, the trial court found that, although plaintiffs claimed some members with delinquent dues were allowed to continue serving as Board officers, the plain language of the bylaws did not require delinquent officers to be removed, it only prevented delinquent members from being elected or appointed as officers.[1] To the extent plaintiffs claimed disparate treatment in the assessment of late fees and interest, the trial court found that none of the members cited by plaintiffs had delinquencies spanning from 2005, and their situations were not comparable.[2] The trial court also found that no preference was established by plaintiffs' claims about IRS violations, fireworks, and any alleged misallocation of funds between defendant's general assessment fund account and the lake lot assessment account. The trial court concluded that plaintiffs failed to establish valid claims in Counts I to IV.

The trial court also concluded that plaintiffs failed to establish a question of fact regarding their usury claim in Count V. It noted that the only support for the claim was Exhibit DD, which merely set forth the annual assessments from 2005 to 2012, but did not present any

---

[1] Article II, § 2 of the bylaws provides:

> Notwithstanding Section I of Article II, only eligible members who have currently paid any and all dues and/or assessments levied by the Association within the time period for making such payment shall be considered active members of the Association. Only active members shall be eligible for election or appointment as directors or officers of the Association, or for membership on an Association committee. Only active members shall be eligible to vote on any matter coming before the Association for a decision."

[2] Article III, § 8 of the bylaws provides, in relevant part:

> In addition, the Board of Directors may establish automatic late charges and/or assess fines as a result of the failure of a Lot Owner to pay his assessments on a prompt basis provided the same is done on a uniform basis for all Lots . . . The Board of Directors may waive any or all of the charges in the event of special circumstances . . . .

calculations showing defendant's interest charges were incorrect. Regarding Counts VI through XI, the trial court concluded that defendant is not a "debt collector" under the FDCPA because its principal business is not collecting debts.

The trial court also granted summary disposition in favor of defendant on plaintiffs' Count XII because plaintiffs "have not established any actual violation of IRS laws, rule and/or regulations. Plaintiffs have also failed to establish they or defendant has suffered any injury from any alleged violation(s)." The trial court granted summary disposition in favor of defendant on plaintiffs' Count XIII because plaintiffs failed to demonstrate defendant paid for or was liable for the use of fireworks at the Fourth of July party. Finally, the trial court ruled that defendant had the right to file liens for delinquent assessments and plaintiffs "have not proffered any authority for the proposition that any minor error in procuring the liens warrants their invalidity." The trial court dismissed plaintiffs' complaint with prejudice.

Regarding defendant's motion for summary disposition of its countercomplaint, the trial court found that plaintiffs failed to cite "any authority that would permit them to unilaterally withhold payment of any portion of the assessments." The trial court found that plaintiffs' alleged bases for withholding payment lacked merit and were unsupported by specific references to the record. Although the trial court ruled that defendant was entitled to partial summary disposition regarding the liability for unpaid dues, interest, late charges, costs and attorney fees, there were questions of fact regarding the amounts of those entitlements, which could be decided with an evidentiary hearing.

In their motion for reconsideration, plaintiffs argued that defendant did not identify in its motions for summary disposition issues that it believed had no questions of fact. Plaintiffs generally maintained that they created a question of fact regarding, *inter alia,* the creation of budgets, whether meetings were held with proper quorums, and Counts XII and XIII. Plaintiffs argued that further discovery, through depositions, would have addressed whether officers were properly elected. They also claimed that trial court also should have allowed plaintiffs to amend their complaint to include defendant's law firm as a defendant in the debt collection claims.

Regarding the countercomplaint, plaintiffs argued the trial court erred by concluding they were liable for assessments, maintaining that defendant's record-keeping was unreliable in light of its failure to initially record plaintiffs' partial 2012 payment, inconsistently-priced late fees, and the failure of the Board to adopt a rule regarding fines. In addition, plaintiffs argued that the trial court did not consider plaintiffs' statute of limitations defense and improperly denied their request to amend the complaint.

The trial court entered an order denying plaintiffs' motion for reconsideration. The trial court rejected exhibits cited by plaintiffs as mere supposition or opinion, including emails from Papa that were written when he was not an officer, and again concluded that plaintiffs failed to establish questions of fact, noting in particular that there was no breakdown regarding how the lake and pond would be maintained as functional storm-retention area with general assessments. Regarding the statute of limitations, the trial court ruled that plaintiffs failed to argue that defense in their initial motion for summary disposition of the countercomplaint, and in any event, the claims were revived when Sandra acknowledged the unpaid assessments. The trial court ruled that plaintiffs failed to establish that amending the complaint to include defendant's law firm

would be anything but futile; allowing defendant to amend its complaint to include the statute of limitations defense did not prejudice plaintiffs because the trial court did not rely on that defense in dismissing the complaint.

On September 21, 2013, defendant filed a motion for a protective order, arguing that plaintiff subpoenaed 10 witnesses for the evidentiary hearing; given that many of them had never served on the Board, plaintiffs were merely attempting to embarrass and burden defendant and the witnesses. At the first day of the evidentiary hearing, defendant offered Papa to testify and urged the trial court to send the remaining subpoenaed witnesses home. Plaintiffs maintained that, if just Papa testified, there would be gaps in the record, and additional witnesses could be necessary for rebuttal or impeachment given that they did not know what evidence defendant would offer. The trial court found plaintiffs' argument that they did not know what defendant would argue was disingenuous in light of the many pleadings in the case. In granting the protective order and allowing just Papa to testify, the trial court found that the subpoenas were abusive, oppressive, and designed to harass.

Papa then testified that he had been on the Board since 2008 (secretary) and was responsible for maintaining financial records. Over plaintiffs' objection, the trial court admitted a spreadsheet that Papa compiled, which he testified demonstrated plaintiffs' obligations from 2005 until September 2013. Papa explained that he used defendant's Quickbooks program to compile the information and he did not personally verify each entry with supporting documents. He testified that the total unpaid assessments were $4,235.89, late fees were $2,075, and interest totaled $1,819.81. Papa testified that late fees are $25 a month ($300 annual maximum). He explained that, in some years, no late fees were charged, but he did not have personal knowledge regarding whether they were uniformly assessed until he took office. He also explained that, in 2012, he only assessed late fees if assessments were delinquent at the time he was drawing up late-fee invoices. Papa further testified that it was generally the policy of the Board to make arrangements with lot owners to obtain payment, but it was unsuccessful in making such arrangements with plaintiffs.

Defendant's attorney, John Finklemann testified regarding his attorney fees.[3] Plaintiffs stipulated to Finklemann's hourly fee of $195. Finklemann testified that the bill ($10,796.08 as of October 1, 2013) was high considering the subject-matter of the litigation was merely annual assessments, but reasonable under the circumstances because of the "vast amount of pleadings and discovery that I had to respond to."

The trial court awarded $1,400 in late fees, ruling that the maximum amount of late fees in any given year could be $300, so in 2007, it disallowed $150 in late fees and, in 2008, it disallowed $525 in late fees. The trial court instructed the parties how interest was to be

---

[3] Defendant had separate counsel (Leonard Henk)—funded by an insurance company—for the defense of the complaint. Finkelmann testified that plaintiffs' claims in the complaint were the same as their defenses to the countercomplaint. Finkelmann testified that, as a result, in order to represent defendant regarding the countercomplaint, he could not divorce himself of the proceedings involving the complaint and took an "active role."

calculated—totaling the amount due for each year and calculating the 7% interest per annum. The trial court awarded $10,976.13 in attorney fees as of October 1, 2013, and instructed the parties to submit or review an itemized bill for representation of defendant after October 1. Finally, the trial court ruled that any defense regarding usury was inapplicable because this was not a situation involving borrowing. The trial court subsequently entered a judgment ordering plaintiffs to pay $20,552.64 to defendant.

II

Plaintiffs assert many arguments on appeal that the trial court erred by granting summary disposition of the complaint and countercomplaint. We disagree.

The trial court granted summary disposition pursuant to MCR 2.116(C)(10), which tests the factual sufficiency of the complaint. *Urbain v Beierling*, 301 Mich App 114, 122; 835 NW2d 455 (2013).

> In evaluating a motion for summary disposition brought under Subrule (C)(10), a reviewing court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. Summary disposition is properly granted if the proffered evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. [*Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67, 75; 854 NW2d 521 (2014).]

This Court reviews a trial court's decision to limit discovery and whether to grant a request to amend the complaint for an abuse of discretion. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 216; 859 NW2d 238 (2014); *Holman v Rasak*, 486 Mich 429, 436, 448 n 10; 785 NW2d 98 (2010). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes. A trial court's findings of fact, such as whether a party's position was frivolous, may not be set aside unless they are clearly erroneous." *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010).

A.

Plaintiffs argue that the trial court abused its discretion by limiting discovery and erred by granting summary disposition before summary disposition was complete. We disagree.

"Generally, a motion for summary disposition is premature if granted before discovery on a disputed issue is complete." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 24-25; 672 NW2d 351 (2003). "However, summary disposition may nevertheless be appropriate if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's position." *Id*. A party opposing summary disposition on the grounds that further discovery is required must "at least assert that a dispute does indeed exist and support that allegation by some independent evidence." *Bellows v Delaware McDonald's Corp*, 206 Mich App 555, 561; 522 NW2d 707 (1994). "Without any assertion regarding what facts are disputed or likely to be uncovered by further discovery, allegedly incomplete discovery will not bar summary disposition." *VanVorous v Burmeister*, 262 Mich App 467, 477; 687 NW2d 132 (2004). "A mere promise that facts will be established is not sufficient." *Id*.

Plaintiffs rely on *Thomai v MIBA Hydramechanica Corp*, 303 Mich App 196; 842 NW2d 417 (2013), where this Court ruled that the trial court unduly restricted a party's ability to conduct discovery without making findings required by MCR 2.302(C), which provides, in relevant part:

> On motion by a party or by the person from whom discovery is sought, and on reasonable notice and for good cause shown, the court in which the action is pending may issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

But the Supreme Court reversed that opinion in *Thomai v MIBA Hydramechanica Corp*, 496 Mich 854; 847 NW2d 245 (2014), holding that the trial court did not abuse its discretion because the party had "seven months of unfettered discovery and, in lieu of granting summary disposition to the defendants, the trial court permitted additional discovery limited to evidence that would support" the party's case.

Although plaintiffs claim they were precluded from taking 17 depositions, in the protective order, the trial court limited plaintiffs to three depositions of their key witnesses to avoid undue burden consistent with MCR 2.302(C). Furthermore, the trial court did not foreclose the possibility that additional depositions could be held. Therefore, plaintiffs cannot establish that the limitation of discovery was outside the range of principled outcomes.

Plaintiffs also claim that summary disposition was premature because discovery was incomplete. In their motion for reconsideration, plaintiffs generally promised that further discovery would create a question of fact regarding disputed issues, particularly whether officers were properly elected. On appeal, plaintiffs cite additional topics that could have been the basis for further discovery, including where defendant banked, the identity of its CPA, past officers' identities, budget creation, and the election of officers. But plaintiffs fail to offer any independent evidence that this discovery would have actually uncovered factual support for their positions; rather, plaintiffs' arguments constitute mere promises that are insufficient to require reversal. *Burmeister*, 262 Mich App at 477. We reject plaintiffs claim of error regarding discovery.

B

Plaintiffs argue that defendant failed to satisfy its initial burden to support its positions in the motion for summary disposition of the complaint with documentary evidence, and that they, in turn, satisfied their burden to demonstrate evidence creating a question of fact. We disagree.

The moving party has the initial burden to demonstrate that it is entitled to summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). It must specifically identify the issues to which it believes there is no genuine issue as to any material fact. *Id.*, quoting MCR 2.116(G)(4). And it must support its motion with affidavits, depositions, admissions, or other documentary evidence that, if left unrebutted, would establish its right to summary disposition. *Barnard*, 285 Mich App at 369-370. If it properly supports its motion, the burden shifts to the non-moving party. *Id.* at 370, citing *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "Where the

burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Quinto*, 451 Mich at 362.

" 'A contract must be interpreted according to its plain and ordinary meaning.' " *Wells Fargo Bank, NA v Cherryland Mall Ltd Partnership* (*On Remand*), 300 Mich App 361, 386; 835 NW2d 593 (2013), quoting *Holmes v Holmes*, 281 Mich App 575, 593; 760 NW2d 300 (2008).

> "Under ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court. If the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate. If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous. The language of a contract should be given its ordinary and plain meaning." [*Wells Fargo*, 300 Mich App at 386, quoting *Holmes*, 281 Mich App at 594.]

1. COUNTS I-IV:  BREACH OF CONTRACT AND MICHIGAN NON-PROFIT ACT

Plaintiffs note the laundry list of contractual and Michigan Non-Profit Act obligations they alleged were breached in the complaint and claim that defendant failed to meet its initial burden of establishing it was entitled to summary disposition because it did not specifically address each obligation and offer evidence that no breach occurred.  Defendant argued some of plaintiffs' claims were time-barred under MCR 2.116(C)(7), and for purposes of that argument, the contents of the complaint would be treated as true unless defendant offered contradictory documentary evidence. *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008).  But to the extent defendant argued there was no genuine issue of material fact that it did not breach its covenants with plaintiffs, defendant argued that plaintiffs could not establish damages from any alleged breaches.  Defendant also attached Papa's affidavit, which provided that, consistent with the covenants, defendant provided maintenance for the neighborhood, collected assessments according to the bylaws, and paid its bills.  To the extent defendant argued there was no genuine issue of material fact that it did not violate the Michigan Non-Profit Act, defendant cited *Ayres v Hataway,* 303 Mich 589; 6 NW2d 906 (1942) for the proposition that questions of policy and internal management were left wholly to defendant's discretion in the absence of nonfeasance, misfeasance, or malfeasance.  In support, Papa averred that defendant operated in the best interests of its members.  Although defendant's motion could be described as non-specific with regard to each violation alleged by plaintiffs, defendant nevertheless satisfied the minimum initial burden required to demonstrate it was entitled to summary disposition of the breach of contract and Michigan Non-Profit Act claims.

Next, it was plaintiffs' burden to establish disputed facts existed regarding each alleged duty, breach, and accompanying damages, or violation of the Michigan Non-Profit Act.  See *Miller-Davis Co v Ahrens Constr, Inc* (*On Remand*), 296 Mich App 56, 71; 817 NW2d 609 (2012).  On appeal, plaintiffs generally state that they raised issues of material fact regarding Counts I through IV, and refer this Court to their trial court pleadings and Sandra's affidavit in which she makes sweeping, non-specific allegations of defendant's mismanagement.

> We have held repeatedly that appellants may not merely announce their position and leave it to this Court to discover and rationalize the basis for their claims; nor may they give issues cursory treatment with little or no citation of supporting authority. [A petitioner's] failure to properly address the merits of this assertion of error constitutes abandonment of the issue on appeal. [*VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 633; 752 NW2d 479 (2008).]

To the extent plaintiffs argue genuine issues of material fact existed on the basis of these generalities, plaintiffs' argument as abandoned. *Id.*

In the complaint, plaintiffs argued they were denied this opportunity for inspection of defendant's records under Article VII, § 1 of the bylaws. On appeal, they cite Sandra's affidavit in which she states that she was denied "the right of access to Association documents." Sandy's statement is belied by plaintiffs' repeated admission throughout the trial court proceedings that defendant turned over documents for their review prior to the institution of the lawsuit and their attachment of these documents to their pleadings. Plaintiffs failed to create a question of fact with an affidavit contradicting their own admissions. See *Dykes v William Beaumont Hosp*, 246 Mich App 471, 481; 633 NW2d 440 (2001).

In addition, plaintiffs cite Sandra's statement in the affidavit that she was never provided an accounting for special assessments in accordance with the bylaws. But plaintiffs do not analyze how this statement establishes a genuine issue of material fact regarding their breach of contract claim. They do not cite the provision in the bylaws requiring such an accounting (duty) or argue how they were damaged by this alleged breach (damages). *Miller-Davis*, 296 Mich App at 71. Therefore, plaintiffs have also abandoned this argument on appeal. *VanderWerp*, 278 Mich App at 633.

Plaintiffs further claim a slew of exhibits, which they do not explain, demonstrates that some members were delinquent in paying assessments making them ineligible to vote or serve as officers on the Board. Again, plaintiffs do not analyze how these facts support their claims in Counts I through IV to establish either breach of contract or a violation of the Michigan Non-Profit Act. On this basis, alone, their claims are abandoned. *VanderWerp*, 278 Mich App at 633. Second, assuming they intend to support their breach of contract claim, Art II, § 2 of the bylaws provides in relevant part, "Only active members shall be eligible for election or appointment as directors or officers of the Association, or for membership on an Association committee. Only active members shall be eligible to vote on any matter coming before the Association for a decision." As the trial court found, plaintiffs failed to offer any evidence to create a question of fact whether the officers were elected or appointed while delinquent, or that they attempted to vote before paying delinquent dues.[4] As such, plaintiffs could not establish any breach. Again, plaintiffs do not make any argument regarding damages.

---

[4] We reject plaintiffs' claim that the trial court made improper findings of fact by concluding there were no facts demonstrating a delinquent officer was elected, appointed, or attempted to vote. It was plaintiffs' burden to create these factual questions. Although plaintiffs cite to

Finally, although plaintiffs do not cite to the bylaws in their argument, Article III, § 2 requires the Board to establish an annual budget for each fiscal year. That plaintiffs have been unable to uncover through discovery some past budgets from an ever-changing, volunteer Board does not create a question of fact regarding whether the budgets were created, since defendant admitted (through Papa's affidavit) that budgets were created according to the bylaws. Therefore, summary disposition of this particular breach of contract claim was also appropriate.

In sum, plaintiffs fail to establish that the trial court erred by concluding no genuine issues of material fact existed regarding Counts I through IV.

## 2. COUNT V: BREACH OF CONTRACT AND MCL 438.31—INTEREST

Plaintiffs' claim in Count V was based on interest charged to them in 2005, claiming it exceeded 7% as allowed by the covenants and MCL 438.31. Papa averred that collections were conducted in accordance with the bylaws and defendant attached the covenants allowing 7% interest following nonpayment of assessments. Defendant therefore satisfied the minimum initial burden required to demonstrate it was entitled to summary disposition of this count.

First, plaintiffs' claim that defendant violated MCL 438.31 fails as a matter of law.

"Usury is, generally speaking, 'the receiving, securing or taking of a greater sum or value for the loan or forbearance of money, goods, or things in action than is allowed by law." ' *Hillman's v Em 'N Al's*, 345 Mich 644, 651; 77 NW2d 96 (1956) (citations omitted). Usury statutes are enacted pursuant to the state's police power for the valid purpose of protecting "necessitous borrowers from extortion." *Wilcox v Moore*, 354 Mich 499, 504; 93 NW2d 288 (1958); *Visioneering Inc Profit Sharing Trust v Belle River Joint Venture*, 149 Mich App 327, 340; 386 NW2d 185 (1986). Michigan's usury statute applies to interest on the loan of money, the forbearance of money, the extension of pre-existing debts and on "all contracts and assurances." *Hillman's*, 345 Mich at 651.

MCL 438.31 provides:

The interest of money shall be at the rate of $5.00 upon $100.00 for a year, and at the same rate for a greater or less sum, and for a longer or shorter time, except that in all cases it shall be lawful for the parties to stipulate in writing for the payment of any rate of interest, not exceeding 7% per annum. This act shall not apply to the rate of interest on any note, bond or other evidence of indebtedness issued by any corporation, association or person, the issue and rate of interest of which have been expressly authorized by the public service commission or the securities bureau of the department of commerce, or is regulated by any other law of this state, or of the United States, nor shall it apply to any time price differential which may be charged upon sales of goods or services on credit. This act shall not be construed to repeal section 78 of Act No. 327 of the Public Acts of

evidence suggesting Agazzi was delinquent in paying dues from 2010, plaintiffs fail to explain how any of the evidence establishes when Agazzi was elected or appointed to the Board, or when he participated in votes.

1931, as amended, being section 450.78 of the Compiled Laws of 1948. This act shall not render unlawful, the purchase of any note, bond or other evidence of indebtedness theretofore issued by any borrower not then domiciled in this state, which bear any rate of interest which is lawful under the law of the domicile of the borrower at the date of issue thereof, and in such case any such rate of interest may be charged and received by any person, firm, corporation or association in this state.

Further, MCL 438.31d provides in relevant part, "a charitable, religious or other nonprofit corporation may waive the defense of usury without regard to the amount borrowed." "Waive" is defined as "to refrain from claiming or insisting on; forgo" or "to dismiss from consideration or discussion." Defendant is a nonprofit corporation. The plain language of MCL 438.31d allows defendant as a nonprofit corporation to dismiss from consideration the defense of usury. Therefore, the trial court did not err by dismissing plaintiffs' claim of usury against defendant.

Second, plaintiffs' failed to create a question of fact regarding whether defendant violated its covenant by charging more than 7% in 2005. Plaintiffs make general allegations that defendant failed to provide an accounting or failed to credit them for dues payments made in 2012, but they do not argue how any of these facts establish that defendant charged them more that 7% interest in 2005. Therefore, the trial court did not err by granting summary disposition of this claim based on the interest rate charged.

### 3. COUNTS VI THROUGH XI: FDCPA

Plaintiffs' claims in Counts VI through XI were based on 15 USC 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.") and 15 USC 1692g (requiring debt collectors provide notice and follow certain procedures when a debt is disputed). The FDCPA defines a debt collector as:

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—

\* \* \*

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide

-13-

fiduciary obligation or a bona fide escrow arrangement; (ii) *concerns a debt which was originated by such person*; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor. [15 USC 1692a (emphasis added).]

Although plaintiffs also argue that defendant failed to meet its initial burden regarding summary disposition of the FDCPA claims, defendant argued in its motion that, because it was a homeowners association collecting assessments, late fees, and interest on its own behalf and was not a debt collector, the provisions relied upon by plaintiffs in the FDCPA did not apply. Defendant's supporting affidavit from Papa as well as the declarations explained the nature of the neighborhood association and an August 28, 2012 letter to plaintiffs established defendant's specific attempts to collect plaintiffs' arrearages. Defendant's arguments and supporting documents demonstrate that it satisfied the minimum initial burden required to demonstrate it was entitled to summary disposition of this count.

On appeal, plaintiffs do not argue that it created a question of fact regarding whether defendant was a debt collector. According to the bylaws, defendant is a neighborhood association created to "promote and maintain the safety, property values and general well being of the members of the Association and the property of the members." Nothing in the record suggests that defendant's primary purpose is the collection of debts or that it regularly conducts debts owed to another. Plaintiffs merely argued below, and on appeal, that defendant was collecting or attempting to collect on a debt that was owed, due, or asserted to be owed or due, and that the debt originated with defendant—excluding it from the definition of a debt collector in 15 USC 1692a(6)(F). See *Eley v Evans*, 476 F Supp 2d 531 (ED Va, 2007) (car dealership and a tow company hired by the dealership to repossess a car were not debt collectors because they were attempting to collect on a debt that was owed, due, or asserted to be owed or due, and that originated with them). Therefore, plaintiffs did not establish a question of fact that defendant was a debt collector under the FDCPA and the trial court did not err by granting summary disposition of Counts VI to XI.

In one sentence in their brief, plaintiffs argue that the trial court should have allowed them to amend their complaint to add defendant's attorney, who attempted to collect the debt This Court reviews a trial court's decision to limit discovery and whether to grant a request to amend the complaint for an abuse of discretion. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 216; 859 NW2d 238 (2014); *Holman v Rasak*, 486 Mich 429, 436, 448 n 10; 785 NW2d 98 (2010). Attorneys can be "debt collectors" under the FDCPA. See *Heintz v Jenkins*, 514 US 291, 299; 115 S Ct 1489; 131 L Ed 2d 395 (1995) (the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation.") But because plaintiffs offer no facts to demonstrate whether the law firm's principal business is debt collection or, if not, whether the firm regularly collects debts on behalf of another, plaintiffs cannot establish that the trial court abused its discretion by refusing their request to amend the complaint.

## 4. COUNT XII: VIOLATIONS OF IRS LAWS

In Count XII, plaintiffs alleged that defendant failed to file the appropriate forms regarding payments for services over $600, 26 USC 6041, failed to notify the IRS regarding the change in its method of accounting, 26 USC 446, and failed to file a tax return form 1120-H, 26 USC 528. In the motion for summary disposition, defendant alleged that dismissal was appropriate under MCR 2.116(C)(8) because plaintiffs had no private right of action to sue for these alleged violations of the tax code. We agree that the plain language of 26 USC 446, 26 USC 446, and 26 USC 528 do not specifically provide for such a private right and, pursuant to 26 USC 7401, "No civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced." Plaintiffs did not claim or offer any evidence that the Secretary authorized the suit or the Attorney General directed its commencement. Therefore, summary disposition of Count XII was appropriate under MCR 2.116(C)(8).

Plaintiffs argue that the trial court improperly granted summary disposition under MCR 2.116(C)(10), on the basis that plaintiffs failed to establish any violations of the tax code or damages, because defendant did not move for summary disposition on this basis and therefore the burden did not shift to plaintiffs to prove a disputed factual issue. Even if the trial court improperly dismissed Count XII under MCR 2.116(C)(10), summary disposition was appropriate under MCR 2.116(C)(8), *Detroit News, Inc v Policemen and Firemen Retirement Sys of Detroit*, 252 Mich App 59, 66; 651 NW2d 127 (2002), quoting *Gibson v Neelis*, 227 Mich App 187, 189; 575 NW2d 313 (1997) (" 'If summary disposition is granted under one subpart of the court rule when it was actually appropriate under another, the defect is not fatal and does not preclude appellate review as long as the record permits review under the correct subpart." '), and reversal is not required.[5]

## 5. COUNT XIII: VIOLATION OF 1931 PA 328

In Count XIII, plaintiffs alleged that the Association illegally used commercial-grade fireworks for personal use in violation of 1931 PA 328. Until January 1, 2012, MCL 750.243a provided:

> (2) Sale, possession, transportation, use, prohibited. Except as provided in subsection (3) and sections 243b, 243c, and 243d,1 a person, firm, partnership, or corporation shall not offer for sale, expose for sale, sell at retail, keep with intent to sell at retail, possess, give, furnish, transport, use, explode, or cause to explode any of the following:

> * * *

---

[5] Plaintiffs claim in passing that, even if they lacked a private right of action to enforce the tax laws, they could still sue defendant for breach of contract for the violation of tax laws. Breach of contract was not asserted in Count XII.

(d) Fireworks containing an explosive or inflammable compound or a tablet or other device commonly used and sold as fireworks containing nitrates, fulminates, chlorates, oxalates, sulphides of lead, barium, antimony, arsenic, mercury, nitroglycerine, phosphorus, or a compound containing these or other modern explosives.[6]

Defendant argued plaintiffs lacked a private right of action, MCR 2.116(C)(8), and there was no genuine issue of material fact that defendant was entitled to a judgment, MCR 2.116(C)(10). Defendant supported its request for summary disposition with Papa's averment that defendant only sponsored a July 4 party[7] and did not purchase fireworks, but a member may have brought some. Assuming without deciding that a private cause of action existed regarding this penal statute,[8] defendant's argument regarding MCR 2.116(C)(10) and Papa's supporting affidavit demonstrate that it satisfied the minimum initial burden required to demonstrate it was entitled to summary disposition of this count.

Plaintiffs were required, in turn, to offer evidence creating a dispute that defendant used such fireworks. On appeal, plaintiffs cite to Papa's affidavit, which only establishes that a member brought fireworks to a defendant-sponsored party and an email advertising a fireworks show at the party. But even if the email and the member's use of fireworks could be attributed to defendant, there is no evidence that they were the type of fireworks prohibited by the statute (i.e., "Fireworks containing an explosive or inflammable compound or a tablet or other device commonly used and sold as fireworks containing nitrates, fulminates, chlorates, oxalates, sulphides of lead, barium, antimony, arsenic, mercury, nitroglycerine, phosphorus, or a compound containing these or other modern explosives."). Because none of the evidence cited by plaintiffs created a question of fact regarding whether defendant violated the fireworks law, the trial court did not err by dismissing that count.

5. COUNTS XIV AND XV: SLANDER OF TITLE

In Counts XIV and XV, plaintiffs alleged that the Association encumbered their property with the lien in violation of MCL 600.2907a, which establishes a cause of action for "[a] person who violates [MCL 565.25] by encumbering property through the recording of a document without lawful cause with the intent to harass or intimidate any person . . . ." "[T]he crucial element is malice." *Gehrke v Janowitz*, 55 Mich App 643, 648; 223 NW2d 107 (1974). " 'Malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that

---

[6] This provision was repealed and the Michigan Fireworks Safety Act was enacted, effective January 1, 2012. 2011 PA 256.

[7] Under Article IV, Section 3(a) of the declarations, general assessments could be used to promote the "health, safety, welfare and recreation of the residents" in the neighborhood.

[8] We note that MCL 750.243e, repealed by 2011 PA 256, provided, "Any person, firm, copartnership or corporation, who violates any of the provisions of sections 243a to 243d,1 or who violates the terms of any permit issued thereunder, is guilty of a misdemeanor." The act did not expressly provide any private right of action for the violation of this offense.

the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury.' " *Fed Nat'l Mtg Ass'n v Lagoons Forest Condo Ass'n*, 305 Mich App 258, 270; 852 NW2d 217 (2014). In *Harrison v Howe,* 109 Mich 476, 479; 67 NW 527 (1896), our Supreme Court stated that a plaintiff

> must also attempt to show that the defendant could not honestly have believed in the existence of the right he claimed, or at least that he had no reasonable or probable cause for so believing. If there appear no reasonable or probable cause for his claim of title, still the jury are not bound to find malice. The defendant may have acted stupidly, yet from an innocent motive.

In the motion for summary disposition, defendant argued that, contrary to plaintiffs' claims, they were not singled out when defendant placed a lien on their property for the amount of unpaid assessments and associated costs. Defendant supported this claim with Papa's affidavit in which he averred that liens had been placed on other members' properties for failure to pay assessments. Defendant's arguments and supporting documents demonstrate that it satisfied the minimum initial burden required to demonstrate it was entitled to summary disposition of these counts.

Plaintiffs were required, in turn, to offer evidence creating a dispute that defendant acted with malice when filing the liens, but they only cite name-calling by defendant's representatives and allegedly inadequate information about the assessments. They fail to establish facts that defendant lacked any reasonable cause for believing plaintiffs had failed to pay assessments and it had a claim of title given Papa's testimony regarding the amounts outstanding and the provision in the declarations providing, "All annual and special assessments, whether general or related to the Lake Lots, together with interest, costs and reasonable attorneys' fees, shall from date of assessment be a charge and a continuing lien upon the Lot against which each such assessment is made." *Harrison*, 109 Mich at 479.[9]

### 6. COUNTERCOMPLAINT

Next, plaintiffs argue that the trial court erred by concluding that defendant satisfied its initial burden of demonstrating that it was entitled to summary disposition of the countercomplaint and that plaintiffs failed to prove there was any genuine issue of material fact that they were liable for unpaid assessments, late fees, interest, and attorney fees. We disagree.

Again, Article IV of the declarations was a "covenant for maintenance assessments." It provided, in relevant part of Section 2:

---

[9] Plaintiffs also claim the liens were not perfected according to MCL 565.25(1), but MCL 600.2907a gives no claim of right against a person who fails to properly perfect a lien. Whether the liens were properly perfected would be relevant to an action by defendant to enforce them, but defendant never filed an action to enforce any liens.

The Declarant hereby covenants, and each Owner of any Lot by acquisition of title thereto or an interest therein is deemed to covenant, and agrees to pay to the Association (1) annual general assessments or charges, and (2) special assessments for capital improvements, such assessments to be. established and collected as hereinafter provided . . . All annual and special assessments . . . together with interest, costs and reasonable attorneys' fees, shall from date of assessment be a charge and a continuing lien upon the Lot against which each such assessment is made. Each such assessment, together with interest, costs and reasonable attorneys' fees, shall also be the personal obligation of the person who was the owner of such Lot at the time when the assessment fell due.

In its motion for summary disposition of the countercomplaint, defendant argued that there was no genuine issue of material fact that plaintiffs had not paid the annual assessment to the Association between 2005 and 2013. Defendant supported the motion with an affidavit from Papa—a current officer of the Board—regarding the amounts owed to defendant. Therefore, defendant satisfied its initial burden.

The trial court granted summary disposition, ruling that plaintiffs breached the covenant to pay assessments, interest, late fees, attorney fees and costs. In the trial court and on appeal, plaintiffs do not challenge their obligation under the covenant to make these payments, but instead argue that, under the circumstances, there was a question of fact regarding whether they could withhold payment.

Plaintiffs cite the provision in the declarations that "No owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the common Areas or by abandonment of his Lot." Plaintiffs then argue that, under expressio unius est exclusion alterius, because the contract does not also prohibit an owner from escaping liability for assessments on the basis of the "misfeasance, nonfeasance, malfeasance, law violations, accounting errors, invalid assessments, and breach of contract/fiduciary duty," they could escape such liability. We agree that, generally, a party who first breaches a contract cannot sue the other party for breach of contract. *Flamm v Scherer*, 40 Mich App 1, 8-9; 198 NW2d 702 (1972). "However, that rule only applies when the initial breach is substantial." *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994). The Supreme Court explained that a substantial breach

can be found only in cases where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party. [*McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964) (citations omitted).]

We agree with the trial court that plaintiff's use a "shotgun approach" in alleging that defendant first breached the covenant thereby precluding recovery in the countercomplaint, and fail to sufficiently explain how the facts in the record support their allegations. A mere reference to exhibits, without explaining what is contained in those exhibits or how they support the allegations of misfeasance, nonfeasance, malfeasance, law violations, accounting errors, invalid assessments, and breach of contract/fiduciary duty, is insufficient to establish that a question of

fact existed regarding defendant's first breach on appeal. *VanderWerp*, 278 Mich App at 633. Although plaintiffs offer somewhat more analysis in their brief that defendant failed to give 30-days' notice of assessments, it is unclear from the exhibits that plaintiffs cite when notice was given, when each assessment was due, and whether the notice provision in Article IV, § 10 of the declarations was violated. Moreover, plaintiffs make no arguments regarding why this alleged breach would have been substantial or made their payment impossible. *McCarty*, 372 Mich at 574.

Citing *Ferrell v Vic Tanny Intern, Inc*, 137 Mich App 238, 243-44; 357 NW2d 669, 672-73 (1984), plaintiffs also argue that defendant breached a duty to exercise its discretion honestly and in good faith. In *Farrell*, the plaintiffs conceded that their exercise facility had a right to "make rules and regulations and conceded that they were in violation of a dress code requiring them to wear navy blue clothing in certain areas of the club which was enacted after they became members." This Court held that the undisputed facts demonstrated that the exercise facility promulgated the dress code to promote uniformity, avoid embarrassment or self-consciousness, and encourage participation from all members. Because the plaintiffs failed to demonstrate that the dress code was enacted in bad faith, this Court concluded that the trial court properly dismissed the plaintiffs' breach of contract claim.

Although plaintiffs cite *Farrell* and explain the covenant of good faith and fair dealing in their brief, they again do not explain with analysis of the record what specific discretionary acts defendant had the right to exercise but failed to do with good faith and fair dealing. *VanderWerp*, 278 Mich App at 633. Plaintiffs have failed to establish that the trial court erred by granting summary disposition of defendant's countercomplaint.

C

Next, plaintiffs allege that the trial court made improper factual findings when it decided the motions for summary disposition and denied their motion for reconsideration. We disagree that any of plaintiffs' challenges require reversal.

Plaintiffs allege that the trial court assumed handwriting on exhibits belonged to plaintiffs. Plaintiffs cite page 2 of the trial court's summary disposition order, but no such reference is made there. Plaintiffs' argument is abandoned because it is not this Court's duty to scour the record to rationalize plaintiffs' claim. *VanderWerp*, 278 Mich App at 633.

Plaintiffs also allege that, in rejecting plaintiffs' claim that they were treated differently than other members, the trial court improperly found that other delinquent members could have been given a fee waiver under a campaign instituted by defendant to collect assessments. How other members were charged was irrelevant to the trial court's ultimate ruling, however. Rather, the trial court acknowledged differences in the amounts charged to delinquent members, but found plaintiffs failed to demonstrate a question of fact regarding preferential treatment because none of the delinquent members were similarly situated to plaintiffs (i.e., delinquent since 2005 and refusing to pay regardless of defendant's waivers of late charges). Similarly, the trial court found that whether some members were allowed to serve as officers on the Board while delinquent did not establish preferential treatment because there were no facts suggesting plaintiffs attempted to serve as officers and were precluded.

Plaintiffs further allege that the trial court made improper findings in its opinion on the motion for reconsideration that there was no question of fact that, in emails from 2004 and 2005, Papa was not speaking on behalf of defendant as a member of the Board. Citing Papa's affidavit in which he stated that he served as an officer of the Board for "a number of years" since 1999, plaintiffs maintain there was a question of fact regarding whether Papa was a member of the Board at that time. But, in the emails cited by the trial court, Papa clearly referred to the Board separately as "they" or "them," and distinguished the Board's action from any of his own. Therefore, plaintiffs fail to establish any error regarding this finding.

Next, plaintiffs allege that the trial court made improper findings regarding the alleged misappropriation of funds between defendant's accounts. But, aside from citing the trial court's opinion, defendant's covenants regarding the purposes of general assessments and separate lake lot assessments, and Papa's speculation in the 2004 and 2005 emails when he was not acting on behalf of defendant, plaintiffs offer no citation to the record or analysis to support their claims that any misappropriation actually occurred. Therefore, plaintiffs' argument is again abandoned. *VanderWerp*, 278 Mich App at 633.

III

Plaintiffs claim that, when the trial court presided over the evidentiary hearing on damages, they were denied their right to a jury trial on that issue. We disagree. Plaintiffs failed to assert any right to a jury below. Therefore, this Court reviews plaintiffs' unpreserved claim of error for plain error affecting substantial rights. *Nat'l Wildlife Fed v Dep't of Environmental Quality*, 306 Mich App 369, 373; 856 NW2d 394 (2014).

The right to a jury trial in a civil action is permissive and not absolute. Const 1963, art 1, § 14; *Marshall Lasser, PC v George*, 252 Mich App 104, 107-108; 651 NW2d 158 (2002). Further, a party may waive a jury trial demand by agreement "in writing or *on the record* . . . ." MCR 2.509(A)(1). The phrase "on the record" in MCR 2.509(A)(1) has been interpreted to include "an expression of agreement implied by the conduct of the parties." *Marshall Lasser*, 252 Mich App at 107. A reviewing court must analyze the totality of the circumstances to determine whether the conduct of the parties justifies the inference of a waiver. *Id.* at 108.

In *Marshall Lasser*, this Court rejected the plaintiff's argument that the trial court erred by proceeding with a bench trial on the issue of damages in the absence of an express withdrawal of the jury demand. *Id.* at 106.

> Both parties were given notice that the court would be deciding the damage issue. The defendant and the plaintiff's representative were present and both were represented by counsel. There is no indication in the record that plaintiff or defendant ever objected to the bench trial, nor is there any indication that either party proceeded under protest. Under the circumstances of this case, we believe both parties' acquiescence to the bench trial evidenced an agreement to waive the secured right. [*Id.* at 109.]

In this case, plaintiffs never demanded a jury trial, but were entitled to rely on the demand made by defendant. *Prentis Family Foundation v Barbara Ann Karmanos Cancer*

*Institute*, 266 Mich App 39, 54; 698 NW2d 900 (2005). Just as in *Marshall Lasser*, however, plaintiffs received notice that the trial court intended to oversee the evidentiary hearing on damages and, contrary to their claims on appeal, plaintiffs did not object. Rather, plaintiffs subpoenaed witnesses for the hearing, participated actively and without protest, and made arguments to the trial court for its consideration on the damages question. In light of plaintiffs' failure to object to the evidentiary hearing and their voluntary participation in the proceedings, the totality of the circumstances justifies the inference of a waiver. Plaintiffs have failed to establish the trial court plainly erred.

IV

Plaintiffs claim that it was error to admit the spreadsheet Papa created for plaintiffs' annual balances. We disagree. The decision to admit or exclude evidence is reviewed for an abuse of discretion. *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004).

MRE 1006 provides:

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

Plaintiffs argue on appeal that they were not given an opportunity to examine or copy the records upon which the spreadsheet was based according to MRE 1006. But plaintiffs' claim is inconsistent with the record demonstrating their possession of voluminous financial records obtained during discovery and attached to their pleadings. In addition, defendant attached to their motion for summary disposition an account summary for plaintiffs, which itemized the date of invoices and amounts charged for each invoice from 2005 to 2013.[10] In light of this record evidence demonstrating compliance with MRE 1006, the trial court did not abuse its discretion by admitting the spreadsheet.

V

Plaintiffs also claim that the trial court improperly quashed their subpoenas for witnesses to testify at the evidentiary hearing. We disagree. A decision on whether to compel witnesses or issue subpoenas is reviewed for abuse of discretion, see *Castillion v Roy*, 412 Mich 873; 312 NW2d 655 (1981), but to establish error requiring reversal, plaintiffs must prove that the alleged error was not harmless. MCR 2.613(A). Papa relied on defendant's account summary to testify regarding the amounts it had assessed to plaintiffs and any payments that they had made. At the evidentiary hearing, plaintiffs did not dispute the total amounts of assessments, late fees, and

---

[10] The fact that plaintiffs questioned the relationship between invoice dates and due dates in the account summary relied upon by Papa to create the spreadsheet went to the weight to be given to those documents, not their admissibility.

interest deriving from the account summary, but attempted to relitigate their liability for those amounts with arguments already rejected by the trial court at the summary-disposition stage. Although plaintiffs claims the witnesses that they subpoenaed, who allegedly served as officers prior to Papa, could have been questioned about "the legitimacy of both the charges and the calculations," plaintiffs offer no proof that any of the witnesses actually possessed information contrary to the account summary or would have testified any differently than Papa regarding the total amounts of assessments, late fees, and interest owed. Therefore, plaintiffs do not establish that they were prejudiced from the trial court's protective order. MCR 2.613(A); *In re Utrera*, 281 Mich App 1, 14; 761 NW2d 253 (2008).

VI

Finally, plaintiffs make several arguments challenging the judgment awarding damages and attorney fees to defendant. Again, we find no error requiring reversal.

This Court reviews for clear error any challenge to the issue of damages determined by the trial court following a bench trial. *Marshall Lasser*, 252 Mich App at 110. The clear error standard provides that factual findings are clearly erroneous where there is no evidentiary support for them or where there is supporting evidence but the reviewing court is nevertheless left with a definite and firm conviction that the trial court made a mistake. *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706, 714 (2007). This Court reviews a trial court's ruling on a motion for costs and attorney fees for an abuse of discretion. *Keinz*, 290 Mich App at 141.

A

First, plaintiffs argue that the trial court erred by rejecting any defense regarding usury. As we concluded earlier in this opinion, the defense of usury was inapplicable to defendant as a nonprofit corporation. MCL 438.31d.[11]

To the extent that plaintiffs argue that the interest charged violated the language of defendant's covenants, independent of the defense of usury, Article IV, § 11 of the declarations provides, in relevant part

> Any assessment not paid within thirty (30) days after the due date (together with expenses of collection set forth below) shall bear interest from the due date at the rate of 7% per annum or at such lesser uniform rate as shall be established by the Association at the time of the fixing of the assessment period.

Plaintiffs claim that interest was charged from dates prior to the due dates. They cite to invoices showing the due dates for assessments but then only point to a chart attached to the judgment

---

[11] Plaintiffs also make this passing reference to MCL 438.32 without any explanation or analysis of the statute or how it would impact interest. This Court deems their undeveloped argument as abandoned on appeal.

showing total interest charged in each month. The chart does not, on its face, provide any information regarding the dates in each month when interest was imposed. Therefore, we are not left with a definite and firm conviction that a mistake was made. *Hill*, 276 Mich App at 308.

B

Plaintiffs argue that the trial court erred by ordering them to pay late charges to defendant because they were not uniformly applied to all members of defendant. As addressed earlier in this opinion, the trial court found that plaintiffs failed to establish a question of fact regarding the uniform application of late charges because none of the other delinquent members were similarly situated to plaintiffs.

C

Last, plaintiffs argue that the trial court erred by awarding attorney fees to defendant's attorney for his work on the countercomplaint for unpaid assessments, interest, late fees. We disagree.

Article III, § 8 of the bylaws provides, "The expenses incurred in collecting unpaid assessment [sic], including interest, costs and attorney fees, and advances for taxes and other liens to protect the lien for assessment shall be chargeable to the Lot Owner in default and shall be secured by a lien on his Lot."

Plaintiffs claim that the attorney fees were actually incurred defending their complaint, not collecting unpaid assessments through the countercomplaint. Plaintiffs cite a statement by Henk demonstrating that he and Finkelmann were working together on plaintiffs' discovery requests. But, at the evidentiary hearing, Finkelmann testified that plaintiffs' claims in the complaint were the same as their defenses to the countercomplaint. In plaintiffs' answer to the countercomplaint, they agreed that many of the same issues were involved in the complaint and countercomplaint. Finkleman further testified that, as a result, in order to represent defendant regarding the countercomplaint for unpaid assessments, he could not divorce himself of the proceedings involving complaint and took an "active role." As the trial court noted when awarding attorney fees, the plain language of the bylaws allow for attorney fees "incurred in collecting unpaid assessment[s]." Given the facts establishing that the claims in the complaint and defenses to the countercomplaint were so intertwined that it was necessary for Finkleman to play a role in both cases to adequately represent defendant in the countercomplaint, it was not clearly erroneous to find that Finkelmann's fees were incurred in collecting plaintiffs' assessments.

Affirmed. Costs to defendant as the prevailing party on appeal. MCR 7.219.

/s/ Michael J. Kelly<br>/s/ Kurtis T. Wilder<br>/s/ Kirsten Frank Kelly

-23-